[Civ. No. 24314. Fourth Dist., Div. One. June 2, 1982.]

Conservatorship of the Person and Estate of KATHLEEN SUE PELTON.
WELLS FARGO BANK, as Conservator, etc., Petitioner and Respondent, v.
WINTON M. PELTON et al., Objectors and Appellants.

COUNSEL

Robert F. Graham for Objectors and Appellants.

Wingert, Grebing, Anello & Chapin and Michael M. Anello for Petitioner and Respondent.

OPINION

**WIENER, J.**—The sole question presented by this appeal is whether under all circumstances a bank/conservator may discharge its fiduciary obligation to the conservatee by depositing estate assets in excess of $264,000 in one of the bank's own 5-1/4 percent passbook accounts for a period of 17 months during which a substitution of conservators is being arranged. We conclude there are many factual circumstances in which such action by a bank would constitute a breach of the fiduciary duty. Because the factual findings of the probate court are inadequate for us to determine whether such a breach has occurred here, we endeavor to articulate the correct legal standard to guide the court on remand.

I

From the thin factual record before us, it appears that during the latter part of 1978, Wells Fargo Bank was acting as conservator of the estate of Kathleen Sue Pelton. On November 14, Kathleen's parents, Winton and Patricia Pelton, informed the bank that they wished to be substituted as conservators of their daughter's estate. By December 8,

Wells Fargo had sold the estate's common stock and fixed income trust fund units and deposited the proceeds—approximately $264,000—in a 5-1/4 percent Wells Fargo savings account. At the same time, amounts in excess of $100,000 deposited in 30-day accounts at various banks were earning a minimum of 9-1/2 percent.

During this period of time, David R. Sherer acted as attorney for both Wells Fargo and the Peltons. On January 15, 1979, Wells Fargo forwarded to Sherer a copy of the final account on the estate assets together with a letter requesting that Sherer petition the probate court for an order approving the final account and appointing the Peltons as the new conservators. In April, Sherer informed Wells Fargo that he perceived a conflict of interest in his representation of both the bank and the Peltons, and asked that Wells Fargo obtain new counsel. Wells Fargo officials discussed the problem with Sherer and apparently believed they had convinced him to continue acting on behalf of the bank in petitioning the probate court.

When nothing happened on the case by August 31, 1979, Wells Fargo sent an inquiry letter to Sherer advising him that "[i]f the bank is to remain in the picture any longer, it will be necessary for us to seek Court authority to implement a new investment program. The funds we are holding cannot stay invested in savings any longer if a transfer to the successor conservators is not imminent." Sherer responded on September 17, reiterating his prior position that he could no longer remain as counsel for the bank. During an exchange of letters over the next several months, Wells Fargo was unsuccessful in obtaining Sherer's letter of resignation. Finally on February 12, 1980, Wells Fargo employed alternate counsel who was able to obtain Sherer's signature on a substitution of attorneys form. Transfer of the estate assets to the Peltons as successor conservators was accomplished on April 17. The probate court order approving the final account and discharging the bank was entered on April 24, 1980.

The Peltons as incoming conservators filed objections to the discharge, arguing among other things that Wells Fargo should be surcharged an amount equal to the difference between 5-1/4 percent interest rate on the $264,000 and the interest rate which could have been obtained had the bank placed the money in successive high-yield 30-day certificates. The probate court disagreed with the Peltons, concluding that a surcharge was unwarranted. The Peltons' request for separate findings of fact and conclusions of law was denied. Instead, the court

included within the final discharge order several conclusionary findings which stated in relevant part:

"3. Wells Fargo Bank, as Conservator of the Estate of Kathleen Sue Pelton, Conservatee, did not act in bad faith, negligently, or in such a manner which would justify an imposition of a surcharge due to mismanagement of the conservatorship estate.

"4. Wells Fargo Bank, as Conservator of the Estate of Kathleen Sue Pelton, Conservatee, did comply with the requisite fiduciary standards in the management of the conservatorship estate, and did exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligenge [sic] exercise in the management of their own affairs."

## II

Civil Code section 2261, subdivision (1) specifies the degree of care to be exercised by a trustee in attempting to maximize the assets placed in his trust: "In investing, reinvesting, purchasing, acquiring, exchanging, selling and managing property for the benefit of another, a trustee shall exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of their capital."[1] The Peltons contend that a trustee of "prudence, discretion and intelligence" would not have placed the $264,000 in a regular passbook account for 17 months when a 30-day deposit of $100,000 or more would have earned twice the interest with equal safety and almost equal liquidity. Wells Fargo responds that, as a factual matter, maximum liquidity was necessary given the purportedly imminent transfer of the funds to the successor conservators. Moreover, the bank argues that as a matter of law any deposit of trust funds in an interest-bearing bank account is a per se qualified investment which automatically discharges the conservator's fiduciary duty.

## A

Wells Fargo's legal argument relies on subdivision (3) of section 2261 which states in part: "In the absence of express provisions to the con-

[1]Unless otherwise noted, all statutory references are to the Civil Code.

trary in the trust instrument, a deposit of trust funds at interest in any bank (including the trustee, if a bank) shall be a qualified investment . . . ." The Peltons reply that the purpose of this statute is not to relieve the bank of its fiduciary duty to reasonably maximize the estate assets but rather merely to explicitly allow what would otherwise be a direct conflict of interest on the part of the trustee in depositing trust funds with itself. (See generally Scott, *The Fiduciary Principle* (1949) 37 Cal.L.Rev. 539, 552.)

As a general rule, "[a] trustee has not performed his duty merely because he has made an investment in a type of security which is authorized; he must use care and skill and caution in selecting the particular investment." (3 Scott on Trusts (3d ed. 1967) § 227.12, p. 1839.) While we have not discovered nor been cited to any California case on point, the court in *In re Doyle's Will* (1948) 191 Misc. 860 [79 N.Y.S.2d 695] addressed an almost identical issue. In *Doyle*, trustees retained the trust assets in a statutorily approved special interest account rather than in a bank savings account which would have paid twice as much interest. Noting that both types of deposits involved "an equal degree of safety," the court stated: "The contention that inasmuch as the deposit is a legal investment, the Court cannot surcharge the trustees for the difference between what was realized as interest and what could have been realized by a deposit in a savings bank is without merit . . . . The statutory authority to invest trust funds was never intended to act as a cloak exculpating trustees from the performance of their duties as prudent men. . . . [¶] It is not within the province of the Court to dictate to a fiduciary the type of authorized investment to be selected for the corpus of a trust fund. However, when a fiduciary, over a long period of time, retains as an investment a bank deposit, without ascertaining or considering the advisability of other forms of investment productive of greater return of income and an equal degree of safety of principal, then such trustee by his non-action and passive course of conduct is negligent . . . ."[2] (*Id.*, at p. 697.)

We agree with the *Doyle* court's conclusion that a statute authorizing a particular type of trust fund investment does not supersede the trustee's general duty to maximize the trust assets consistent with safety and other relevant considerations. Depending on the circum-

---

[2]We do not view it as critical whether the standard is stated in terms of trustee "negligence," "mismanagement," or "breach of fiduciary duty." Whatever the terminology, the relevant question is whether the trustee has acted reasonably under the circumstances, which inevitably involves both legal and factual determinations.

stances, a statutorily authorized investment may or may not be the prudent course of conduct for the trustee to pursue. Moreover, the statute at issue here (§ 2261, subd. (3)) merely authorizes the deposit of funds "at interest" and does not in any sense automatically condone placement of the money in a lower interest account than would be reasonable under the circumstances.

In addition, although subdivision (3) clearly authorizes a bank-trustee to deposit trust funds with itself, this type of practice is contrary to the general law of trusts (see *In re Binder's Estate* (1940) 137 Ohio St. 26 [27 N.E.2d 939, 949, 129 A.L.R.130]) and the statutory authorization does not require us to ignore the inherent conflict thus created. The built-in incentive for a bank-conservator such as Wells Fargo to retain the estate assets for as long a period as possible at as low an interest rate as possible must be closely scrutinized. We therefore conclude that where a bank-trustee places trust funds on deposit with itself at a rate of interest which is less than would have been earned by a deposit of a like size over a similar period of time, the bank bears the burden of proving that the circumstances reasonably known to it at the time the investment decision was made justified the lower interest account.

### B

Applying this legal standard to the factual record before us, we are unable to determine to what extent, if any, Wells Fargo should be surcharged for the higher rate of interest which could have been earned. ▆ ▆▆▆ Since the probate court made no factual findings and instead framed its determination in terms of legal conclusions (see *ante*, p. 500), the factors relevant to Wells Fargo's liability have never been explored.[3] ▆ For instance, Wells Fargo's claim that

---

[3]We need not take issue with Wells Fargo's assertion that formal findings of fact pursuant to Code of Civil Procedure section 632 are not normally required in cases involving objections to a probate accounting. (See, e.g., *Conservatorship of Oliver* (1962) 203 Cal.App.2d 678, 685 [22 Cal.Rptr. 111].) But the general rule remains that where contested issues in a probate proceeding necessitate underlying factual determinations, those determinations must be stated in writing. (Prob. Code, § 1230; *Estate of Rosland* (1946) 76 Cal.App.2d 709, 710 [173 P.2d 830]; 4 Witkin, Cal. Procedure (2d ed. 1971) § 305, p. 3114.) Although the court's factual findings need not be contained in a document separate from the order in the underlying proceedings (*Rosland, supra,* at p. 711), they must be sufficient to allow meaningful appellate review by indicating "the precise facts found by the court" and specifying "the exact grounds upon which the judgment rests." (*Frascona* v. *Los Angeles Ry. Corp.* (1920) 48 Cal.App. 135, 137 [191 P. 968].) Here, we are unable to discern whether the probate court's conclusion is based on an incorrect legal standard or permissible factual findings.

maximum liquidity was necessary given the imminent transfer to the successor conservators (see *ante*, p. 500) presumes that at all times during the entire 17-month period it was reasonable for Wells Fargo to expect a transfer with less than 30 days notice, 30 days being the minimum time deposit available at the enhanced interest rates. Whether such an expectation was reasonable at all times, some times, or no time during the 17 months is a question of fact for the probate court. Also, since the bank was aware who the successor trustees were to be, we question whether Wells Fargo's fiduciary duty obligated them to suggest to the Peltons the timing of the transfer so as to allow placement of the estate funds in the higher interest account. Again the reasonableness of such a suggestion is generally a question for the trier of fact. Finally, the court must determine whether Wells Fargo was at all responsible for the extraordinary delay in arranging for the substitution of conservators. We are confident that with the legal standard appropriately articulated (see *ante*, p. 502), the probate court is now in a position to make the necessary factual determinations as to whether and to what extent Wells Fargo may be liable to the conservatorship estate.

### *Disposition*

The probate court order on petition for discharge is reversed and the case is remanded for further proceedings consistent with this opinion.

Staniforth, Acting P. J., and Reed, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.