[No. B161317. Second Dist., Div. Two. Mar. 24, 2004.]

MELINDA PENNY et al., Plaintiffs and Appellants, v.
KRISTIN ELAINE WILSON, as Trustee, etc., Defendant and Respondent.

**COUNSEL**

Rogers, MacLeith & Stolp and Douglas R. MacLeith for Plaintiffs and Appellants.

Loeb & Loeb and David C. Nelson for Defendant and Respondent.

**OPINION**

**NOTT, Acting P. J.**—Appellants Melinda Penny (Melinda), John Ferris (John), and Richard Ferris (Richard) appeal from a judgment entered after a court trial in favor of respondent Kristin Elaine Wilson (Kristin). Appellants contend that the trial court erred in finding the 1998 creation of a trust and conveyance of real property to the trust by decedent William Ferris (William) to be valid. We agree, and reverse the judgment.

## FACTS AND PROCEDURAL BACKGROUND

On December 4, 1981, William and Elaine Ferris (Elaine) created the Ferris Family Trust (FFT). The following six real properties were put into the trust: Newport Beach residence (Newport Beach Property); San Marino residence (San Marino Property); Alhambra rental property; Alhambra commercial building; Alhambra medical building; and Costa Mesa apartments. William and Elaine's adopted children Melinda, John, and Richard, and their biological child Kristin, were the beneficiaries of the trust.

Elaine passed away on December 10, 1981. According to the terms of the FFT, upon Elaine's death, William was to divide the trust assets of the FFT into the survivor's trust and the decedent's trust. The survivor's trust was to be made up of the separate property of the survivor, the survivor's share of the community property, and marital deduction property.[1] William did not divide the trust assets at that time. The FFT also provided that upon the survivor's death, any unappointed assets remaining in the survivor's trust and any assets remaining in the decedent's trust were to be combined into a children's trust and divided equally among the four children.

In February 1997, Attorney George Turner prepared a trust split document pursuant to which William designated the San Marino Property to the decedent's trust, and the remaining property to the survivor's trust.

William was diagnosed with anemia in late 1997. In February 1998, William met with Turner to prepare the documents necessary to create a personal residence trust for the benefit of Kristin and her children (the Residence Trust) and to transfer the Newport Beach Property to that trust. Also, in February 1998, William experienced mental confusion, and a March 4, 1998 MRI scan revealed a cancerous tumor in his brain. William underwent brain surgery on March 5, 1998. Turner prepared the Residence Trust, a deed to transfer the Newport Beach Property to the Residence Trust, and related documents, which William signed on March 7, 1998. William died on May 13, 1998. Melinda, who came from Illinois to attend the funeral, discovered the trust documents while staying with William's current wife Jill.

Kristin filed a petition seeking confirmation of the designation of the Newport Beach Property in the Residence Trust, which she later withdrew. Melinda, John, and Richard opposed the petition, and filed the operative first amended complaint (FAC) for: (1) cancellation of deed; (2) quiet title; (3) constructive trust; (4) declaratory relief; and (5) breach of trust. According to the allegations of the FAC, William lacked the legal power to convey the Newport Beach Property to the Residence Trust; Kristin obtained the signature of William on the Residence Trust declaration by undue influence and fraud; the Residence Trust declaration was never legally delivered, and the Residence Trust was never properly funded. The FAC alleged that William lacked the legal power to convey the Newport Beach Property because it belonged to the decedent's trust and could not be transferred contrary to the terms of the FFT. The FAC sought to set aside the transfer of the Newport Beach Property to the Residence Trust.

---

[1] Marital deduction property for federal estate tax purposes is a deduction from a decedent's gross estate of the value of property interests passing from the decedent to his surviving spouse. (*Estate of Libeu* (1988) 205 Cal.App.3d 1436, 1446 [253 Cal.Rptr. 456].)

At trial, over appellants' objections, the trial court admitted into evidence a document entitled "Declaration Regarding Trust Split," which was an unsigned copy of William's declaration purporting to divide the trust estate assets into the decedent's trust and survivor's trust (the Trust Split Document).

The trial court found in favor of Kristin, finding that appellants had not proved undue influence or that William lacked mental capacity to create the Residence Trust. In determining that William intended to value the assets designated by the Trust Split Document as of December 10, 1981, the trial court referred to William's statement that the division of the trust assets into the decedent's trust and the survivor's trust was "effective as of December 10, 1981, and in accordance with the valuation established." The trial court also relied on the statement in the Trust Split Document that the assets attributed to the decedent's trust equalled the total value of $600,000, and that this value represented the maximum allowance for the decedent's trust as appraised as of the date of Elaine's death. The trial court found that although the value of the Newport Beach Property in May 1998 was $1,850,000, that in December 10, 1981, "if computed mathematically, approximately 51% of the FFT's value would have been allocable to the Decedent's Trust and approximately 49% of that value would have been allocable to the Survivor's Trust."

The trial court concluded that in so valuing the assets based on the date of Elaine's death in 1981, rather than the value in 1997 when the Trust Split Document was drafted, William acted within his authority, did not commit a breach of trust, and the designation and valuation were binding on all parties. The trial court denied the relief requested by the FAC; determined and declared that Kristin, in her capacity as trustee of the Residence Trust, was the rightful owner of an undivided 100 percent fee simple interest in the Newport Beach Property; quieted title to an undivided 100 percent fee simple interest in the Newport Beach Property in Kristin's capacity as trustee of the Residence Trust; reformed the grantor designation and the signature line of the 1998 deed to read "William D. Ferris, Trustee U/D/T dated December 4, 1981 F/B/O the Ferris Family," and awarded Kristin her costs of suit jointly and severally against appellants.

This appeal followed.

## DISCUSSION

### 1. *Admissibility of the Trust Split Document*

■ The admission of evidence concerning the contents of a writing that has been lost or destroyed is subject to the abuse of discretion standard. (*Guardianship of Levy* (1955) 137 Cal.App.2d 237, 250 [290 P.2d 320].)

When the trust documents were discovered, the original, executed version of the Trust Split Document purporting to allocate the San Marino property to the decedent's trust and the remaining property to the survivor's trust, was missing. As a preliminary matter, appellants contend that the trial court erred by admitting into evidence the Trust Split Document, which was an unsigned copy, on the grounds that the writing was not properly authenticated and that it was inadmissible secondary evidence.

■ A writing must be authenticated before it or secondary evidence of its contents can be admitted into evidence. (Evid. Code, § 1400.) In order for a document to be authenticated, evidence must be admitted sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is. (Evid. Code, § 1401.) At trial, Turner testified that he prepared the original Trust Split Document following his meeting with William in February 1997. Turner and his secretary Angela Martin testified that they saw the executed original Trust Split Document in April 1998, when Turner removed it from his file in accordance with William's request to forward all of William's original estate planning documents to William. In light of the foregoing testimony, we conclude that sufficient evidence supported the trial court's finding that the document was authenticated.

■ Under Evidence Code section 1521, the contents of a writing may be proved by otherwise admissible secondary evidence, as long as there is no dispute concerning material terms of the writing; justice does not require exclusion; or the admission of the secondary evidence would be unfair. Here, there is no dispute as to the contents of the writing. What is disputed is whether William signed the original document. Nor would admission of the evidence be unfair to appellants since, by all accounts, William executed the original document. Accordingly, the trial court did not abuse its discretion in characterizing the executed original as a lost document, and admitting the Trust Split Document on that basis.

On appeal, appellants attack the testimony of both Turner and Martin, characterizing Martin's memory as unreliable. They also point to an itemized bill that does not show preparation of the Trust Split Document. However, we decline appellants' invitation to reweigh the evidence, and conclude that the trial court did not abuse its discretion in admitting the Trust Split Document.

> 2. *Whether substantial evidence supports the trial court's determination that William acted in accordance with his duties as trustee*

>> A. *Standard of review*

■ We use the substantial evidence standard of review to review a judgment based on the trial court's determination of disputed factual issues. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378].)

>> B. *Duties of the trustee*

■ The trustee has the duty to administer the trust according to the trust instrument. (Prob. Code, § 16000.)[2] The trustee also must deal impartially with all beneficiaries. (§ 16003.) If a trustee is given discretionary power, the trustee must exercise his or her power reasonably. (§ 16080.) Even if a trustee is given "sole" and "absolute" discretion, he or she must act in accordance with fiduciary principles and must not act in bad faith or in disregard of the purposes of the trust. (§ 16081, subd. (a).)

>> C. *Whether William acted in accordance with the terms of the FFT and his duties as trustee*

According to the terms of the FFT, the trust purposes were: (1) the support of William;[3] (2) support of the children until they reached the age of 21;[4] and

---

[2] All further statutory references are to the Probate Code, unless otherwise indicated.

[3] Article IX, part C states: "In exercising its discretion hereunder, the Trustee is to consider the needs of the Survivor for support as the primary purpose of the Trusts during his or her lifetime, even if the satisfaction of such needs requires invasion of the entire Trust Estate."

[4] Article VIII, part A provides that the trustee has wide authority and discretion to pay out such amounts of income from the children's trusts as necessary to support the children, without requiring mandatory equality of distribution. Article VIII, part C, subdivision (1) provides that the children's trust shall not be divided into shares until all the living children reached the age of 21.

(3) preservation of principal and equal distribution to the children.[5] At the time of William's death, the trust purpose was to divide the remaining assets between the four children, in equal shares.

The FFT directed William to divide the trust estate into a survivor's trust and decedent's trust upon Elaine's death. William, however, did not divide the trust property for 16 years until 1997, when he executed the Trust Split Document. In that document, William declared that effective as of December 10, 1981, he divided the trust estate assets into the decedent's trust and the survivor's trust. He attributed the San Marino Property to the decedent's trust, with an appraised value as of 1981 of $600,000. However, in its statement of decision, the trial court found that the value of the San Marino Property in 1998 was $203,577. By valuing the Newport Beach property at the 1981 value of $450,000, William ignored the appreciation of the Newport Beach Property to approximately $1,850,000 in 1997 (the statement of decision notes that the value in 1997 would have been somewhat less than the $1,850,000 figure).

■ Under section 16047, subdivision (c), the trustee has the duty to invest and manage trust assets, and take into consideration the appreciation of capital. The purpose of the trust is paramount, and the trustee must act impartially toward all beneficiaries. While Kristin claims that William did not act in bad faith, it appears that he did not act impartially or reasonably in pursuing the purpose of the FFT. Rather, William transferred the Newport Beach Property and the Alhambra properties to the survivor's trust, leaving only the San Marino Property, worth $203,577, in the decedent's trust. In February 1998, William transferred the Newport Beach Property, worth $1,850,000 to the Residence Trust, which benefited Kristin and her children over appellants. We conclude that William did not act impartially toward the beneficiaries, nor did he fulfill the purposes of the FFT to distribute the trust estate equally among the children.

Kristin argues that: (1) under the terms of the FFT and governing law, William's decision in allocating assets between the survivor's trust and the decedent's trust is binding and conclusive because he did not act fraudulently or in bad faith; (2) since William made his allocation decision a year before he established the Residence Trust, there is no evidence that he intended to confer a special benefit on Kristin; and (3) appellants failed to satisfy their

---

[5] Article VIII, part C, subdivision (2) provides that the trustee shall divide the assets remaining in the children's trust into equal shares.

burden of proof that the allocation was improper because they did not produce evidence of 1997 values, but only evidence of 1998 values.

Citing terms of the FFT, Kristin urges that William acted completely within the scope of his authority. As to the survivor's trust, the FFT gave the survivor the power to appoint the principal and undistributed income of the trust estate to himself or herself. Kristin claims that this provision gave William the absolute right and power to appoint assets of the survivor's trust to anyone he chose for any purpose he wanted, relying on section 650, which states that the donee of a general power of appointment may, among other things, make an appointment of all the appointive property at one time, of present or future interests, in trust.

In determining whether a general power of appointment is made, we must consider the trust provisions as a whole. (*Estate of Smith* (1981) 117 Cal.App.3d 511, 516 [172 Cal.Rptr. 788].) A general power of appointment confers upon the holder of the power the right to determine the ultimate recipient of the property subject to the power and may, if he or she chooses, appoint the property to himself or herself. (*Id.* at p. 517.) The court, in *Estate of Smith,* held that where the trustee was given a power of appointment with respect to the trust corpus of $5,000 or 5 percent annually, noncumulative, the testatrix could not have intended that the power to invade corpus constituted a general power of appointment. (*Ibid.*)

Under *Estate of Smith, supra,* 117 Cal.App.3d at page 516, as to the decedent's trust, which should have been divided equally with the survivor's trust as of the date of Elaine's death, William was not given a general power of appointment. Rather, he was allowed to exercise the power of appointment "during any calendar year only to the extent of Five Thousand Dollars ($5,000.00) or five percent (5%) of the aggregate value of the Trust Estate, whichever amount shall be greater." Thus, William did not have the power to disturb the decedent's trust. We read the terms of the FFT as giving William the general power of appointment over the survivor's trust since he was given the power to appoint the principal and undistributed income of the trust estate to himself. As previously noted, the survivor's trust consisted of: (1) the separate property of the survivor; (2) the survivor's share of the community property; and (3) the marital deduction property. Therefore, the real properties, including the Newport Beach Property, were community property, and only half of the value of those assets should have been attributed to the survivor's trust, and the remainder attributed to the decedent's trust.

Kristin cites from the FFT to urge that William had the right to revoke or amend the survivor's trust at any time[6] and that his allocation of the Newport Beach Property to the survivor's trust is binding and conclusive unless he acted fraudulently or in bad faith.[7] Kristin cites a number of cases published in the 1940's for the proposition that a trustee acting under a sole and absolute discretion standard may not be challenged simply as being unsound, but instead only on grounds of fraud or bad faith. (See *Neel v. Barnard* (1944) 24 Cal.2d 406, 417 [150 P.2d 177]; *Estate of Canfield* (1947) 80 Cal.App.2d 443, 450 [181 P.2d 732]; *Campbell v. Folsom* (1945) 70 Cal.App.2d 309, 312 [160 P.2d 906].)

■ The problem with Kristin's argument is that in 1981, and again in 1983, the Civil Code section specifying standards by which the courts are to review the acts of a trustee in light of powers granted by the trust instrument was substantially amended to reflect case law. (Former Civ. Code, § 2269; Stats. 1981, ch. 1046, § 1, p. 4032; Stats. 1983, ch. 99, § 3, p. 204.) Section 16081, subdivision (a), which replaced former Civil Code section 2269 in 1991, states that if a trust instrument confers absolute, sole, or uncontrolled discretion on a trustee, the trustee shall act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purpose of the trust. Subdivision (b) of that section provides that "Notwithstanding the use of terms like 'absolute,' 'sole,' or 'uncontrolled' by a settlor or a testator, a person who is a beneficiary of a trust that permits the person, either individually or as trustee or cotrustee, to make discretionary distributions of income or principal to or for the benefit of himself or herself pursuant to a standard, shall exercise that power reasonably and in accordance with the standard." That is, section 16081 requires that even under a grant of absolute discretion, the trustee is not authorized to neglect its trust or abdicate its judgment. (*MCA Inc. v. United States* (9th Cir. 1982) 685 F.2d 1099, 1103–1104, citing *Coberly v. Superior Court* (1965) 231 Cal.App.2d 685, 689 [42 Cal.Rptr. 64] [same].) Courts will review the trustee's action to determine whether they are reasonable, arbitrary, capricious or in bad faith. (*MCA Inc. v. United States,* at pp. 1103–1104.)

---

[6] Article IV of the FFT states: "From and after the death of either of the original Trustors, this Agreement, insofar as it relates to the SURVIVOR'S TRUST, may be revoked or amended at any time and from time to time by the Survivor delivering written notice of revocation or amendment to the Trustee . . . ."

[7] In Article X, part L, the FFT states: "In making the distributions to any Trust or share created under this Agreement, the judgment of the Trustee concerning the valuation of assets distributed shall be binding and conclusive upon all Beneficiaries. The Trustee may distribute the shares to the various Trusts or to Beneficiaries by making distribution in cash, or in kind, or partly in cash and partly in kind, or in undivided interests, in such manner as the Trustee, in its sole and absolute discretion, deems advisable."

■ We conclude that by allocating the Newport Beach Property to the survivor's trust without taking into account the appreciation in value of 16 years, William disregarded the purpose of the trust to distribute the trust estate in equal shares among the children. Therefore his allocation of the Newport Beach Property to the survivor's trust is not a binding and conclusive act.

Kristin further urges that appellants failed to provide adequate evidence of what the values of the properties were in 1997, since appellants relied on evidence of assets valued at the time of William's death in May 1998. The trial court, however, took into account the fact that in 1997, the value of the Newport Beach Property would have been somewhat less than in 1998. We also reject Kristin's further argument that even if "tangential evidence" of 1997 values was taken into account, the split was still in accordance with the terms of the FFT. In support of her estimate, she claims that a substantial remodel of the Newport Beach Property increased the value of the property after 1997; that the San Marino Property was unencumbered in February 1997, and therefore was worth more than in May 1998; and William was entitled to reimbursement of Elaine's estate taxes from the decedent's trust. In our view, the encumbrance of the San Marino Property and the remodel of the Newport Beach Property only underscores the partiality of William's actions. Nor has Kristin shown evidence that a reimbursement of the estate taxes was ever sought.

■ We conclude that William breached his trust by transferring the most valuable assets of the FFT to the survivor's trust, then establishing a Residence Trust, to which the Newport Beach Property was designated, for the benefit of Kristin and her children. Accordingly, since we have found that the transfer of the Newport Beach Property to the survivor's trust and subsequently to the Residence Trust was invalid, we reverse the judgment of the trial court. After much consideration of whether the properties should be valued as of 1997 or 1998, we have determined that equity demands that the properties should be valued at their current net value, with appropriate deductions for mortgages, improvements, and credits for maintenance. If the properties are valued as of 1997 or 1998, the parties will have the advantage of hindsight in light of the increased values since those dates, which in our view, would lead to more contention between the parties.

## DISPOSITION

The judgment of the trial court is reversed. The matter is remanded to the trial court. The transfers resulting from the Trust Split Document and the Residence Trust and the accompanying deed shall be set aside. All the real properties listed in the trial court statement of decision as being trust property just prior to the transfer of the Newport Beach Property on March 7, 1998, are declared undivided property of the FFT to be distributed according to its terms utilizing the current net value after deduction for mortgages, improvements, and credits for maintenance, to be determined by the trial court. Thus, Kristin shall receive 100% of the proceeds of the survivor's trust and all four children shall receive 25% of the proceeds of the decedent's trust. Appellants shall receive costs of appeal.

Doi Todd, J., and Ashmann-Gerst, J., concurred.