Filed 3/5/15  Okonski v. Jones CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUDITH A. OKONSKI, as Trustee, etc., | |
| Plaintiff and Respondent, | G048475 |
| v. | (Super. Ct. No. A218268) |
| CASSANDRA D. JONES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nancy Wieben Stock, Judge.  Affirmed.

Cassandra D. Jones, in pro. per., for Defendant and Appellant.

Law Offices of Steven A. Ehrlich and Steven A. Ehrlich for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

The trial court approved the account and report prepared by a trust's successor trustee. The court found the objections to the account and report, filed by one of the trust's beneficiaries, were without reasonable cause and made in bad faith. Therefore, the beneficiary was surcharged for the successor trustee's attorney fees and costs incurred in defending against those objections. The beneficiary appeals.

We affirm. Substantial evidence supported the court's findings that the account and report were proper and should be approved, and that the successor trustee did not breach any fiduciary duties. Having reviewed the record de novo, we agree the beneficiary did not have reasonable cause to bring the objections. Substantial evidence supported the court's finding that the beneficiary acted in bad faith in bringing and pursuing the objections.

## STATEMENT OF FACTS

Marie Hicks Jones was the mother of Cassandra D. Jones, Louis Jones, and Tracey Bronson.[1] In December 1995, Marie established The Marie Hicks Jones Revocable Trust (the Trust), of which she was the initial trustee. The Trust owns several parcels of real property, including two parcels on which Jones Community Care, Inc., operates residential care facilities for adults with developmental disabilities. Jones Community Care, Inc., was also owned by Marie.

Following a lengthy dispute with her siblings, Cassandra was appointed as the first successor trustee of the Trust in October 2003, and was also appointed as the conservator of Marie's person and estate. In September 2008, Cassandra was removed as

---

[1] We will refer to Marie Hicks Jones and Cassandra D. Jones by their first names to avoid confusion; we mean no disrespect.

conservator and replaced by Judith A. Okonski (the Trustee), who also replaced Cassandra as successor trustee in November 2008. Marie died on April 14, 2011.

The Trustee filed a second account current and report, petition for settlement, and petition for preliminary distribution of the Trust in March 2012. She filed two supplements to the second account current. Cassandra filed objections to the second account current.

Following a trial, the court:

(1) Settled, allowed, and approved the second account current, as filed, and ratified, confirmed, and approved all of the Trustee's acts and transactions, as set forth in the second account current as supplemented.

(2) Approved payment of fees to the Trustee from the Trust's assets.

(3) Approved payment of the Trustee's attorney fees and costs from the Trust's assets.

(4) Approved the distribution of shares of Jones Community Care, Inc., stock to the residual beneficiaries of the Trust.

(5) Found that Cassandra's objections to the second account current were without reasonable cause and in bad faith, and surcharged Cassandra for the Trustee's attorney fees and costs incurred in defending against the objections.[2]

Judgment was entered, and Cassandra timely appealed.

---

[2] The trial court also found that Cassandra's objections to Okonski's second account as the conservator were without reasonable cause and made in bad faith, and that the Trustee's attorney fees and costs incurred in opposing those objections should be surcharged against Cassandra's share of the Trust's assets. Cassandra does not address this issue in her appellate brief. Cassandra does argue about some of the issues raised in her objections to the second account of the conservator. We will address these issues as appropriate in dealing with Cassandra's appeal from the approval of the Trustee's second account current.

DISCUSSION

I.

*DID THE TRIAL COURT ERR IN APPROVING THE TRUSTEE'S SECOND ACCOUNT CURRENT?*

When a beneficiary objects to a trustee's account, the burden shifts to the trustee to produce evidence justifying the account. (*Purdy v. Johnson* (1917) 174 Cal. 521, 527-530.) Cassandra identifies several areas in which she claims the Trustee's second account current and report were inaccurate or incomplete, and, on that basis, claims the trial court erred in approving the second account current. We use the substantial evidence standard of review to review the court's findings based on its determination of disputed factual issues. (*Penny v. Wilson* (2004) 123 Cal.App.4th 596, 603.)

Cassandra contends that items of personal property, located at real property on Daniel Lane, which were taken by the beneficiaries, were not reported in the schedules attached to the second account current and report, in violation of Probate Code section 1061, subdivision (a)(9). The Trustee testified that after Marie's death, family members were permitted to take personal items from the Daniel Lane property, and the value of those items, while not included in the schedules attached to the second account current and report, would be deducted from the family member's shares when the Trust was distributed. Accordingly, the court's finding that Cassandra failed to meet her burden of proof on this issue was supported by substantial evidence.

Cassandra claims the second account current and report failed to show the receipt of a $200,000 loan. (Prob. Code, §§ 1062, subd. (a), 16063, subd. (a)(1) & (2).) Cassandra concedes receipt of the $200,000 was reflected in the first account current of the Trust, prepared and filed by Cassandra when she was the successor trustee. By the time the second account current was prepared at the end of the period, that cash had been paid out and was reflected in other schedules. Therefore, substantial evidence supported

4

the court's finding that the second account current and report were not improper based on this contention.

Cassandra next contends the second account current failed to adequately show the Trust's liabilities for taxes and for a judgment against it. (Prob. Code, § 1063, subd. (g)(2) & (4).) As we understand her argument, Cassandra criticizes the Trustee for failing to reconcile the estate's personal tax liability with the Trust's tax liability. The Trustee testified that certain tax liabilities were still to be determined because while Cassandra was successor trustee, she had failed to pay some taxes, and had never provided the Trustee with the information necessary to fully determine the tax liabilities of the Trust and Marie's estate. There was substantial evidence to support the trial court's finding that the second account current should be approved, despite any alleged issues with the tax liabilities reflected in the second account current.

As to the judgment against the Trust, we presume that Cassandra is referring to the order to pay fees to the guardian ad litem. The earlier court order approved fees for the guardian ad litem be paid to the law firm with which she was then associated. In the interim, the guardian ad litem had moved to a new firm; the trial court ordered that the payment of fees be made to the attorney, not to her current or former firm. The trial court found that the individual attorney, not a law firm, was named as the guardian ad litem and that there was no potential exposure of the Trust if it paid the attorney rather than her law firm. Substantial evidence supported the court's order that the payment for the fees of the guardian ad litem be made directly to the guardian ad litem, rather than to her old or her new law firm.

## II.

*DID THE TRIAL COURT ERR IN FINDING THE TRUSTEE DID NOT BREACH ANY DUTIES?*

In the statement of decision, the trial court found the Trustee had not breached her duty to the Trust or its beneficiaries: "[T]he Trustee appropriately

5

discharged her duties and administered the Trust with reasonable care, skill and caution, acted prudently and exercised appropriate business judgment and/or normal judgment, given the circumstances as Successor Trustee. [¶] . . . The Successor Trustee came into the administration of the Trust in less than ideal conditions, predicated upon the finances of the Trust being in disarray, based upon the prior conduct/tenure of . . . Cassandra D. Jones, and additionally by failure of Cassandra D. Jones to give to the Successor Trustee a Fourth and Final Account and/or documents relative to the accounting status of the Trust. [¶] . . . Issues relative to cash flow and lack of income to the Trust, as well as issues relating to the entity, Jones Community Care, of which the Trust held 75% of the outstanding share[s], were all existing at the time of the appointment of the Successor Trustee, and were not caused by her."

Probate Code section 16040, subdivision (a) sets forth the criteria by which a trustee's actions are judged: "The trustee shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." The trial court's finding that the Trustee did not breach her fiduciary duties is reviewed to determine whether it is supported by substantial evidence. (*Penny v. Wilson*, *supra*, 123 Cal.App.4th at p. 603.)

On appeal, Cassandra argues the Trustee breached her duties through the same acts and omissions detailed *ante* as grounds supporting Cassandra's objections to the second account current. For the same reasons that we conclude the trial court did not err in approving the second account current and report, we conclude the trial court did not err in finding the Trustee did not breach any duties to the Trust or its beneficiaries.

Cassandra also argues the Trustee breached her fiduciary duties by failing to make a property owned by the Trust—the "Maple Property" (italics omitted)—income-producing. In the statement of decision, the trial court found: "With regard to

6

the issue of the Walnut and Maple properties, and as to the profitability and cash position of Jones Community Care, the Court determined that Judith A. Okonski acted properly and was not to blame for any reduced money to either the Estate or Trust. [¶] . . . The Court based its decision on the following facts: The profitability/cash position of Jones Community Care had been a problem for years. This was borne out by way of [the Trustee]'s Request for Judicial Notice 13: The Independent Audit Report, as well as the testimony relative to the change in regulatory policies which drove revenue down. [Cassandra] produced insufficient evidence of control of Jones Community Care regarding rental payments."

The Trustee's testimony was that a review of the tax returns, books, and records of Jones Community Care, Inc., indicated the corporation did not have sufficient funds to pay rent to the Trust after all other necessary payments were made. The Maple Property had been modified to serve as a residential care facility for multiple residents, and could not easily be rented out to a single-family renter. Therefore, the potential demand for the property was limited. Accordingly, the Trustee used her best judgment as trustee to allow Jones Community Care, Inc., to continue operating at that location without paying rent to the Trust.[3]

Our prior opinion in this case makes clear that at the time the Trustee took over from Cassandra, the finances of the Trust were in disarray, Cassandra had failed to file income tax returns or make property tax payments, and Cassandra had made substantial payments to herself from the Trust's assets. (*Conservatorship of Jones* (Mar. 7, 2012, G043185) [nonpub. opn.].) The evidence presented at the trial we are currently considering on this appeal did not support a claim that the Trustee breached her fiduciary duties by permitting Jones Community Care, Inc., to continue operating at the Maple Property without paying rent.

---

[3] A real estate broker testified the fair market rental value of the Maple Property was $8,800 per month.

Cassandra cites authority explaining how a trustee should administer a trust and for what a trustee may be charged if he or she commits a breach of trust. Cassandra does not specify any alleged losses or charges to the Trust for which she claims the Trustee is liable.

Cassandra claims the Trustee violated her duty to keep Cassandra, a beneficiary of the Trust, reasonably informed about the Trust and its administration. (Prob. Code, § 16060.) Cassandra's only evidence in support of this claim is the testimony of the Trustee's counsel that she received "calls from [Cassandra] stating that [she] was not receiving return phone calls from [the Trustee]." Such evidence is insufficient to reverse the trial court's order.

Cassandra argues the Trustee failed to safeguard the Trust property, and the Trust's real property was vandalized, causing a loss to the Trust estate. Evidence was offered that the Trust credited the buyers of the Raitt Street property with between $4,000 and $8,200, which was withheld from escrow on the closing of the deal, for damage to the property. No evidence was presented, however, that the damage to the Raitt Street property was caused by the negligence, malfeasance, or breach of fiduciary duty on the part of the Trustee.

III.

*DID THE TRIAL COURT ERR IN FINDING CASSANDRA'S OBJECTIONS WERE FILED WITHOUT REASONABLE CAUSE AND IN BAD FAITH?*

"If a beneficiary contests the trustee's account and the court determines that the contest was without reasonable cause and in bad faith, the court may award against the contestant the compensation and costs of the trustee and other expenses and costs of litigation, including attorney's fees, incurred to defend the account. The amount awarded shall be a charge against any interest of the beneficiary in the trust. The contestant shall be personally liable for any amount that remains unsatisfied." (Prob. Code, § 17211,

8

subd. (a).)  Whether a contest was brought without reasonable cause is a legal issue we review de novo; whether the contest was brought in bad faith is a factual determination reviewed on appeal for sufficiency of the evidence.  (*Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1226.)  The burden of proof in any hearing on objections to an accounting is on the objector.  (*Conservatorship of Hume* (2006) 140 Cal.App.4th 1385, 1390.)

"'Reasonable cause,' when used with reference to the prosecution of a claim, ordinarily is synonymous with 'probable cause' as used in the malicious prosecution context.  [Citation.]  [¶] 'Probable cause' to prosecute an action means an objectively reasonable belief that the action is legally tenable.  [Citation.]  There is no probable cause to prosecute an action only if no reasonable attorney would believe that the action had any merit and any reasonable attorney would agree that the action was totally and completely without merit.  [Citations.]  The probable cause determination is objective and is based on the facts known to the malicious prosecution defendant at the time the action was initiated or prosecuted.  [Citation.]  Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed.  [Citations.]  [¶] Whether there was probable cause to have prosecuted an action in light of the facts then known to the malicious prosecution defendant is a legal question for the court to decide.  [Citations.]  Any controversy as to what facts were known to the malicious prosecution defendant at the time the action was initiated presents a question of fact for the trier of fact.  [Citation.]  If there is no dispute as to what facts were known or if the factual dispute is not material to the probable cause determination, the existence of probable cause is a pure question of law.  [Citation.]" (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 926-927, fns. omitted.)

Would any reasonable attorney have believed Cassandra's objections to the Trustee's second account current and report had merit?  Cassandra's objections listed 12 specific ways in which she challenged the Trustee's account and report.  Following trial,

9

the court found that "after four days of trial[,] I have been unable to determine that any one of these objections has been proved to even a civil standard." In the statement of decision, the court found the objections were without reasonable cause because "[t]here was no basis for the objections in that no credible evidence supporting the objections was introduced by Cassandra D. Jones." The court further found, "[t]here was no evidence presented which met the burden of proof required."

As explained *ante*, all of Cassandra's objections were without merit. The trial court did not err in approving the second account current and report, or in finding the Trustee did not breach her fiduciary duties. Having reviewed the record de novo, we agree with the trial court's conclusion that Cassandra did not have reasonable cause to bring the objections.

At the conclusion of trial, the court found the term "bad faith" is "not described within the statute; but in my experience, it's generally understood that a bad faith filing is something that's done for a purpose that's essentially at odds with a proper use of the fact-finding process. [¶] It may be informed by anger, emotions, it may be a frivolous activity, it may be something that's designed to perhaps harm or harass another party. Those are the features that one would normally associate with bad faith. [¶] In this case I do acknowledge that I believe [Cassandra] was and still is angry over the manner in which her mother's last months took place. She sees the current fiduciary in the case as being a causative factor. She appears to have great disappointment in the fiduciary's role and also in the conduct of certain fellow family members and certain co-beneficiaries who she believes have perhaps been taking advantage of certain situations. [¶] This appears to be the primary impetus for the filings; but again, looking at the filings themselves, the court must filter the claims and attacks made in the objections through a neutral filter, free of any anger, emotion, or other thoughts to see if they have merit, are they nonfrivolous, are they viable, are they good faith objections. The court is unable to make that conclusion at this time."

10

As to Cassandra's bad faith, the statement of decision states Cassandra's objections to the Trustee's second account current and report were "motivated by anger and disappointment as to the fiduciary's role and as to certain family members and co-beneficiaries." Cassandra does not make any specific arguments on appeal supporting her claim that she was not acting in bad faith when she filed objections to the second account current and report. We presume that Cassandra's argument is that because she had reasonable cause to file the objections, she could not have done so in bad faith. As explained, *ante*, Cassandra did not have reasonable cause to file the objections.

## IV.

### *DID THE TRIAL COURT FAIL TO MAKE SUFFICIENT FINDINGS OF FACT?*

Cassandra argues the trial court failed to make sufficient factual findings in the statement of decision. The trial court's factual findings must be sufficient to allow meaningful appellate review, and must state the facts found by the court and must specify the grounds on which the judgment rests. (*Conservatorship of Pelton* (1982) 132 Cal.App.3d 496, 502, fn. 3.)

In the statement of decision, the trial court made the following findings: "With regard to the issue of Second Account Current and Report of Successor Trustee, Judith A. Okonski, and Petition for its Settlement and for Allowance of Compensation to the Successor Trustee and her Attorney BettyJane Champlin; Petition for Preliminary Distribution as Supplemented, the Court[']s decision is that the Second Account Current and Report of Successor Trustee, be settled, allowed and approved as filed, and all acts and transactions of the [Trustee], set forth in said accounting as supplemented or relating to matters set forth in same, are ratified, confirmed and approved. [¶] . . . The Court based its decision on the following facts: [¶] . . . That the Trustee appropriately discharged her duties and administered the Trust with reasonable care, skill and caution, acted prudently and exercised appropriate business judgment and/or normal judgment,

11

given the circumstances as Successor Trustee. [¶] . . . The Successor Trustee came into the administration of the Trust in less than ideal conditions, predicated upon the finances of the Trust being in disarray, based upon the prior conduct/tenure of . . . Cassandra D. Jones, and additionally by the failure of Cassandra D, Jones to give to the Successor Trustee a Fourth and Final Account and/or documents relative to the accounting status of the Trust. [¶] . . . Issues relative to cash flow and lack of income to the Trust, as well as issues relating to the entity, Jones Community Care, of which the Trust held 75% of the outstanding share[s], were all existing at the time of the appointment of the Successor Trustee, and were not caused by her." The court also found: "With regard to each and every objection set forth and/or presented at trial by Cassandra D. Jones, the Court finds that as to said objections, Cassandra D. Jones failed to meet her burden of proof and that each and every objection, therefore, fails. [¶] . . . The Court based its decision on the following facts: There was no evidence presented which met the burden of proof required. [¶] . . . The legal basis for the Court's decision is that with regard to objections to an accounting, pursuant to Vandekamp v. Bank of America (1988) 204 Cal.App.3d 819, 251 Cal.Rptr. 530, the burden of proof is on the objector. With regard to guardianships and conservatorship proceedings, the burden of proof in any hearing on objections is on the objector. In Re: Conservatorship of Hume (2006) 140 Cal.App.4th 1385, 1390. Objector failed to meet her burden of proof."

Cassandra complains that the trial court "failed to provide precise facts to support the findings." As to the propriety of the Trustee's actions, nothing more was required in the statement of decision. As to the objections, Cassandra fails to explain what additional findings the court could have made beyond the finding that Cassandra failed to provide evidence to meet her burden of proof. The trial court was not required to identify the evidence presented, and then explain why it was not sufficient to meet Cassandra's burden, nor was it required to identify the evidence Cassandra might have presented to meet her burden. The court did not omit any material facts from its factual

12

findings; it was not required to delve into evidentiary minutiae. (See *People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 524 [detailed evidentiary analysis not required by California law, but trial court must make findings as to material issues which fairly disclose court's determination].)

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

13