[Civ. No. 33803.    Second Dist., Div. One.    Feb. 20, 1969.]

Estate of MARIE FRIDAY FLANNERY, Deceased. WILLIAM FRIDAY FLANNERY, as Trustee, etc., et al., Petitioners and Appellants, v. SHEILA FLANNERY, a Minor, etc., et al., Objectors and Respondents.

Williams, Miller & Williams and E. Logan Williams for Petitioners and Appellants.

Samuel B. Picone for Objectors and Respondents.

LILLIE, J.—This is an appeal by the remainderman under a trust and the trustee from an order directing the latter to pay the net income from trust funds in his possession to the guardian of an incompetent's estate under circumstances hereinafter set forth. ██ The order being considered as one "instructing . . . a trustee" (Prob. Code, § 1240), it is appealable as such. (*Estate of Ferrall,* 33 Cal.2d 202, 204 [200 P.2d 1, 6 A.L.R.2d 142].) As will appear, the incompetent (James Joseph Flannery, referred to as "James") is the beneficiary not only of the guardianship but of the trust as well.

James' mother, Marie Friday Flannery, died testate on February 23, 1957; by her will, dated August 8, 1955, she left one-half of her estate outright to her youngest child, Elizabeth, and one-fourth (likewise outright) to her son, William. Prior to the making of her will, James (her third child) had been adjudged incompetent and committed to an institution for the mentally insane; on September 21, 1953, his wife, respondent Mary Louise Flannery, was granted letters of guardianship of both person and estate. Accordingly, the will of his mother conveyed the remaining one-fourth of her estate in trust for his benefit, specifically, "for [his] support, comfort, maintenance and health."

The guardianship estate came into being under the following circumstances: James and his wife were married in 1929, a child (respondent Sheila Flannery) being the issue of such union. There was evidence that James worked for only the first six months after his marriage. While the dates of such transactions are not furnished in the briefs, it seems undisputed that assets constituting the estate (of which the wife was made guardian) had their origin in a series of gifts made by the wife from her separate property; in September of 1953 they were inventoried at approximately $74,000. It further appears that James commenced to receive income therefrom

upon the adjudication of his incompetency. In February of 1959 the wife was granted an interlocutory decree of divorce from James on the ground of incurable insanity; a final judgment was entered in February of the next year. In pertinent part the decree provided that James and his successor guardian, his brother William,[1] pay directly to plaintiff for the support of the minor child Sheila the sum of $150 per month, until further order of court. It was further therein adjudged that "this interlocutory judgment of divorce shall not relieve the plaintiff of any obligation imposed by law as a result of the marriage between plaintiff and defendant James Joseph Flannery for the support of said James Joseph Flannery."

William, in the meantime, had assumed his duties as the named trustee of the trust created for the benefit of James under their mother's will. As shown earlier, he was empowered to provide for the support of James, the instrument specifically providing that he do so out of net income and so much of the principal thereof as in his discretion should be required. In the event of James' death, according to a further clause, his share was distributable to his sister (Elizabeth), the appealing remainderman here. The trust additionally provided that "under no circumstances shall either of my said Trustees ever pay or permit the payment of any of the Trust income or corpus or any proceeds of any Trust hereof to, or for the use or benefit of" James' wife or his daughter (Sheila) "and this wish and desire shall be carried out even although [his wife] is, can or may be the Guardian" of James' person and/or estate. The above provisions, just quoted, simply confirm a clause in the mother's will wherein it is stated that she has intentionally omitted to provide for James' wife or Sheila "as they are financially independent. . . ."

William continued as guardian of the guardianship estate until 1968, during all of which interval he also remained as trustee of the trust estate. His resignation followed objections by Sheila on the ground of mismanagement to his eleventh account and report when, at a court hearing held with respect thereto, a conflict of interest was suggested. A banking institution was named successor guardian of the estate only. Subsequently, William as trustee of the trust estate filed a petition for instructions in which he asked for an order directing him as trustee to accumulate the assets of the trust estate during such time as the guardianship estate had assets with

---

[1] James' wife resigned as guardian in 1956.

which James could be supported and, upon exhaustion of such guardianship assets, the trust to thereafter carry out the provisions therein made for the support of James during his lifetime.

The court thereafter made the order, here challenged, directing the trustee to pay to the guardian of James' estate all of the net income thereof to help defray the cost of James' maintenance beginning January 1, 1968. Continuing: "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the corpus of the Estate of James Joseph Flannery III shall be utilized for his support, but not exhausted, and may be invaded to cover those expenses not met by the net income of the aforesaid trust estate and the aforesaid guardianship estate. Before the assets of the guardianship estate are reduced below $50,000 market value, instructions should be requested from the above entitled Court so to do. At such time (or earlier, if the guardian wishes to petition at an earlier time because of circumstances then existing) the Court may require invasion of the corpus of the guardianship estate and the trust estate on a proportionate basis.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the estate of Mary Louise Flannery, former wife of James Joseph Flannery III, shall not be utilized and substantially exhausted before the Trustee shall resort to the trust principal or income thereof to defray the necessary expenses of support and maintenance of James Joseph Flannery III. The trust net income shall be utilized for the support of said incompetent before utilization or exhaustion of the guardianship estate or the former wife's estate. The trust principal shall not now be invaded. The extent to which such principal shall be utilized in the future is not determinable at this time.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the assets of the guardianship estate of James Joseph Flannery may now be invaded to cover his expenses not met by the net income of the trust estate or the guardianship estate. The point at which such invasion shall cease, or shall be reduced, and the trust estate assets invaded, is not determinable at this time."

The foregoing order was rendered after the filing by the trial court of a memorandum decision. Made a part of the record at the request of appellants, it makes reference to the financial conditions of the two estates as of 1968 and earlier. Valued at $70,710.75 in January of 1968, the annual income

from the guardianship estate was $2,324.68, of which sums (principal and interest) approximately $7,200 was expended for the ward's support. The corpus again had to be invaded in an amount substantially exceeding income for the accounting period previous to that just referred to. If similar incursions into principal had not been made over the years, it was noted that the value of the estate would have been $175,000 instead of the value given it in 1968. The trust, on the other hand, grew from $51,293.74 (in 1958) to $127,188.85 some 10 years later, no part thereof being used for the beneficiary's maintenance. The 1967 net income, amounting to approximately $1,400 after fees and expenses, has been allowed to accumulate.

Contrary to the determination below, it is now contended by appellants that the principal of the trust estate, as well as the income therefrom, should be allowed to continue to accumulate until such time as the guardianship estate is completely exhausted and bereft of assets with which to maintain the ward. Under the circumstances here present, we cannot agree with such contention.

By California statute it is provided that ''A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust.'' (Civ. Code, § 2269.) No such absolute discretion was conferred by the subject instrument which, in pertinent part, empowers the trustee ''To pay all, or so much of the net income therefrom, and so much of the principal thereof, as in the discretion of my said Trustee shall be requisite for the support, comfort, maintenance and health of my said son, . . . for and during his natural life.'' Whenever a trust properly comes under judicial supervision, it is the general rule that where a trustee is given discretionary powers, the court will not control the trustee's actions exercised pursuant thereto merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere. (*Estate of Greenleaf*, 101 Cal.App.2d 658, 662 [225 P.2d 945].) Too, while the court may not substitute its judgment for that of the trustee, if it finds on substantial evidence that his powers have been reasonably exercised, the question is not open to review (*Estate of Genung*, 161 Cal. App.2d 507, 512 [326 P.2d 861]); a contrary finding, of necessity, is governed by the same legal principle. The

determination whether the evidence is sufficient to support the finding of the trial court that the trustee has been guilty of an abuse of discretion compels an inquiry into the intentions of the settlor in providing for the beneficiary as was done and an examination of the conduct of the trustee in the administration of the trust. (*Estate of Ferrall*, 41 Cal.2d 166, 174 [258 P.2d 1009].) To that end, as stated in *Ferrall*, the court may ''interpose if the trustee does not act 'in a state of mind in which it was contemplated by the settlor that he would act.' '' (P. 177.)

In its memorandum decision (which explains its thinking) the trial court quoted from *Ferrall* and noted that the trust instrument indicated two intentions or ''purposes'' on the settlor's part. Her primary purpose was for the maintenance of her son, while her secondary intention was her wish that none of the trust estate be used for the benefit of James' wife or Sheila, her granddaughter.

In *Estate of Lackmann*, 156 Cal.App.2d 674, 680-681 [320 P.2d 186], the court noted that ''the testator's *primary* desire in the creation of the trust was that George receive proper care and while the trustee was given complete and absolute discretion in determining how or in what manner that care was obtained, his discretion was necessarily limited to there being care supplied and to its being proper.'' (Italics added.) As in our case, the son-beneficiary of the *Lackmann* trust was a longtime patient in a state institution and the trustee declined to pay for his maintenance until a petition for instructions was filed. The court affirmed the order. The provisions of the *Lackman* trust are strikingly similar to those at bar—indeed, in some respects much stronger. Thus, '' 'I desire that my trustee provide, out of the income of my properties, or if the income should be inadequate, out of the proceeds from the sale of corpus of the trust, for the proper care, support and maintenance of my son. . . .' '' (P. 680.) And subsequently: '' '. . . I vest in my said trustee complete and absolute discretion as to how much he should expend from the trust funds for the proper care, support and maintenance of my said son. . . .' '' (P. 680.) Said the court with respect to the complete and absolute discretion thus bestowed, '' [S]uch discretion is not an arbitrary one and one which would permit the trustee to provide no support whatever for George and to throw him on the charity of others or of the state.'' (P. 678.) As a result, the trustee was ordered

to pay out of net income and, if necessary, to invade the corpus. We cannot accept appellants' argument that *Lackmann* is distinguishable. First, it is by them argued that the incompetent son in the cited case did not have assets of his own, whereas James Flannery has a guardianship estate worth almost $70,000; second, the trustee in our case is directed to pay all or so much of the net income as in his discretion "shall be requisite for the support of . . . James." Respecting the first attempted distinction, decedent Flannery knew of the guardianship estate when the trust was created. As for the second, the term "requisite" has been defined as "required by the nature of things, by circumstances, or by the end in view." (Webster's Third New Internat. Dict.) Since the end in view was James' support and since decedent knew of the guardianship's existence, the emphasis on the subject word assumes no importance. Finally, the maintenance of James as the primary purpose of the trust is further shown by the use of the words "remaining" before the "principal and/or income" distributable to Elizabeth upon the death of James.

As mentioned earlier, the trial court was of the view that the subject instrument also had a secondary purpose. Reference thereto is thus made in its memorandum decision: "Although the trustor wished no part of the trust property to go to the former wife and child, surely she did not desire that the trustee refuse any assistance in the support of her son until the son's estate was exhausted. Were the court so to construe her intent, a secondary trust purpose (nothing to the wife) would be accomplished and her primary purpose (to help her son) would be frustrated and the tail would wag the dog." In any event, the order under review makes no provision for the benefit of either James' wife or Sheila out of trust income or corpus, although both would indirectly benefit under James' will (executed prior to the incompetency adjudication) if the guardianship is not exhausted upon his death—such latter contingency must be weighed against the other consideration, namely, the primary purpose of the trust. It is asserted by appellants, however, that Sheila will directly benefit from the order in that income from the trust estate, when commingled with the income from the guardianship, will help defray the last nine months of child support (at $150 per month) still due before attainment of her majority. But there are sufficient assets in the guardianship to pay for such expenditures without compelling resort to trust income.

■ Appellants complain that the court should not have admitted the testimony of James' wife. It appears, however, that reference was made by appellants to the requirement in the interlocutory decree that she was legally obliged to support her husband; accordingly, it was proper for the court to receive evidence respecting her compliance therewith. The reception of evidence showing the establishment of the guardianship with her separate property which has continued to maintain James for some 15 years was not error.

■ It is contended that the court erred in interpreting James' status when it ordered the trustee to pay net income into the estate and authorized the guardian, before the assets fell below $50,000 (or earlier at his discretion), to petition for authority to invade the corpus of both estates on a proportionate basis. Appellants rely on certain sections of the Welfare and Institutions Code, section 7275 et seq., relating to the property and support of patients in state hospitals. Section 7279 states that if any person committed to a state mental hospital has sufficient estate for the purpose, the guardian of his estate shall pay for his care to the extent of the estate; under the same section the court may require the guardian to sell such property necessary for his ward's maintenance if there is not sufficient money on hand to pay the hospital's claim, but payment for the patient's care shall not be exacted if there is likelihood of his recovery or release and payment will so reduce his estate that he will become a burden to the community upon discharge. In the case of James, it is argued that his guardianship is of a value in excess of $60,000 despite sales of assets, and he could not possibly be a burden to the community. It seems clear, nevertheless, that the code sections in question were enacted to provide the appropriate agency with the right to collect fees; they are not concerned with the instant dispute between a guardian and a trustee as to who shall pay for his maintenance. Furthermore, any income obtained from the trust becomes part of the estate to which reference is made in section 7279.

■ Appellants complain of "Error concerning the trust corpus." Cited is *Estate of Ferrall, supra,* where the issue was likewise the invasion of the corpus. There would appear to be no validity to this claim since the court left to a later date its determination respecting an invasion of the trust assets on a proportionate basis with those of the guardianship. At such future time the instant claim may more properly be litigated.

The remaining points urged are subsidiary to those heretofore mentioned and require no separate discussion.

The order (instructing trustee) is affirmed; the attempted appeal from ''Special Findings of Fact'' is dismissed since section 1240, Probate Code, makes no provision therefor.

Wood, P. J., and Fourt, J., concurred.