Filed 8/22/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| MELODIE Z. SCOTT, as Trustee, etc., | |
| Plaintiff and Appellant, | E062672 |
| v. | (Super.Ct.No. RIP1200509) |
| A'YANA MCDONALD, | OPINION |
| Defendant and Respondent. | |


APPEAL from the Superior Court of Riverside County. Thomas H. Cahraman, Judge. Affirmed as modified.

Horspool & Horspool and J. David Horspool for Plaintiff and Appellant.

Dorothea L. Miller for Defendant and Respondent.

Following a trial, the probate court approved, subject to a $93,036.75 surcharge, the first and final account and report of trustee (First Report), filed by Melodie Z. Scott (Trustee), trustee of The A'Yana McDonald Special Needs Trust (the trust). (Prob.

1

Code, §§ 1061-1064.)[1]  Trustee raises three issues on appeal.  First, Trustee contends the probate court did not apply the correct legal standard.  Second, Trustee asserts substantial evidence does not support the finding of breach.  Third, Trustee contends the probate court erred by denying compensation for Trustee's services.

## FACTUAL AND PROCEDURAL HISTORY

### A.    BACKGROUND

A'Yana McDonald (Beneficiary) was born in September 1997 and has been diagnosed with mild-moderate cerebral palsy, attention deficit hyperactivity disorder, and seizures.  Beneficiary attends special education classes at school.  Beneficiary's mother (Mother) provided care for Beneficiary from approximately 2007 to 2012.  In 2012, Mother failed a background check and was no longer permitted to serve as Beneficiary's in-home caretaker.  In 2012, Beneficiary's father (Father) became Beneficiary's primary care provider.  Mother and Father divorced in 2005.  They remarried in 2011, but maintain separate households.

### B.    CREATION OF THE TRUST

Beneficiary, through her guardian ad litem, sued Allen Tuggle, M.D. and others (Riverside County Superior Court case No. RIC344642).  As part of the settlement in that case, the trust was established.  The trust document provided, "The amount of money that will initially be deposited into the trust is $221,423.40.  The trust is for the primary benefit of the [Beneficiary] . . . [who] has a disability in the nature of motor and

---

[1]  All subsequent statutory references will be to the Probate Code unless otherwise indicated.

2

cognitive delays that substantially impairs her ability to provide for her own care or custody and constitutes a substantial handicap; her condition appears to be permanent and she is not expected to experience significant improvement in the future."

The trust document provided, "C. The intent and purpose of this trust is to provide a discretionary, spendthrift trust, to supplemental public resources and benefits when such resources and benefits are unavailable or insufficient to provide for the Special Needs of the Beneficiary. As used in this instrument, the term 'Special Needs' means the requisites for maintaining the Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any public agency, office, or department of the State of California, or of any other state, or of the United States of America. The funds of the trust may be used as an emergency or backup fund secondary to public resources. Special Needs include without limitation special equipment, programs of training, education and habilitation, travel needs, and recreation, which are related to and made reasonably necessary by this Beneficiary's disabilities. This is not a trust for the support of the Beneficiary. All payments made under this Trust must be reasonably necessary in providing for this Beneficiary's special needs, as defined herein.

3

"D. The settlement and the payments to this trust are all subject to the approval and order of the above-entitled Court. . . . With the approval and order of the Court in the above-described action, [the trust] is established, [Trustee] is appointed as Trustee thereof, and is authorized by the Court in the above-described action to execute this trust."

The trust instrument further provided, "This trust is subject to the continuing jurisdiction of the Superior Court of California, initially in the County of Riverside. Court accountings shall be filed in the Probate Department of the Riverside County Superior Court at the end of the first year of administration and biennially thereafter." Trustee signed the trust instrument on December 8, 2004. A court order establishing the trust and appointing Trustee was filed on December 8, 2004.

C.     ACCOUNT, REPORT, AND PETITION

In July 2012, Trustee filed the First Report, along with a petition for settlement and termination of the trust with uneconomically low principle. Trustee asserted she was unaware the trust was court-supervised and apologized for her misunderstanding, i.e., not filing prior accountings during the life of the trust. Trustee explained that some expenses of the trust included educational testing for Beneficiary, two vehicles, vacations to Jamaica, and a house purchased by Beneficiary's parents.

Trustee requested a trustee's fee of $34,229.55, which she had already paid to herself, for the seven and one-half years that she served as trustee. Trustee explained that, at the end of the trust's life, there had been a balance in the trust of $15,574.85, and

4

Trustee distributed that money to Beneficiary's parents, so they could purchase the home.

The First Report started on December 8, 2004, and reflected a total value of $229,984.81 in cash. On October 25, 2007, $1,250 was paid to a property management company for rent; $103,750 was paid for Beneficiary's daycare and evening care; $10,650.88 was spent on Beneficiary's education; $34,229.55 was paid to Trustee as compensation; $23,896.35 was spent on "living expenses," which included items such as long distance telephone bills and trips to London and Jamaica; and $24,404.50 was spent on vehicle expenses, such as car insurance and vehicle repairs. The final distribution of $15,574.85 was made to Beneficiary's mother.

D.    OBJECTIONS

Beneficiary, through her court appointed attorney, filed objections to the First Report, and to the petition for settlement and termination of the trust. Some of the objections were as follows: (1) there were no supporting time records for the fees paid to Trustee; (2) there was no allegation that the vacations were solely for Beneficiary's benefit; (3) there was no allegation that it was reasonable to pay for vacations; (4) there was no allegation that Beneficiary obtained an interest in the real property purchased with the final $15,574.85 distributed to Mother; (5) there was not a court order authorizing the distribution of $15,574.85 to Beneficiary's mother; (6) there was no allegation that the automobile expenses were for the benefit of Beneficiary; and (7) there was no allegation that Beneficiary's education expenses could not have been

5

paid by public benefits. Beneficiary requested that Trustee be surcharged $259,309.38 for missing interest payments and for improper disbursements.

E.     RESPONSES TO THE OBJECTIONS

Trustee filed responses to Beneficiary's objections. Trustee asserted there were not missing interest payments. As to trustee paying herself compensation, Trustee asserted, "[T]his was not a 'Trust funded by Court Order,' no court order was necessary before the Trustee could pay herself compensation."

In regard to vacations, Trustee contended the vacations were for Beneficiary's benefit, and Mother's vacation expenses were paid because she was Beneficiary's caregiver. In regard to the $15,574.85 given to Mother, Trustee asserted the money was for closing costs for purchasing a house. The trust would not hold an interest in the home due to the trust being terminated because it was uneconomical to administer. As a result, Trustee did not need to verify how the $15,574.85 final distribution was used, and did not know if the money was ultimately used to purchase a house. In regard to education expenses, Trustee asserted all the expenses were beyond what would be provided by public benefits. Trustee further asserted she did not need a court order to pay for education expenses.

F.     PROBATE EXAMINER'S NOTES AND RESPONSES

Trustee filed responses to the probate examiner's notes. The first examiner's note reflected Trustee did not have a license to act as a professional fiduciary from January 2009 to May 2011, but continued serving as a professional fiduciary. On May 10, 2011, in an administrative hearing involving the Department of Consumer Affairs,

6

Trustee was issued a license subject to probation conditions. Trustee responded to the examiner's note by asserting the matter was already resolved by the administrative law judge.

The second examiner's note reflected Trustee paid herself $34,229.55 in compensation without prior court authorization. Trustee responded by asserting she was entitled to just and reasonable compensation, and $34,229.55 was just and reasonable compensation. The third examiner's note reflected Trustee paid herself $8,613.20 for the time she was serving as trustee without a license. Trustee responded by contending the matter was resolved by the administrative law judge.

The fourth note reflected that Trustee failed to itemize her activities so as to establish what activities justified a fee of $34,229.55. Trustee responded by asserting she would provide an itemized log to the court. The fifth note reflected that it was unclear how Beneficiary benefitted from distributing $15,574.85 to Mother for the purchase of a house. Trustee responded by contending it was in Beneficiary's best interest for her parents to have a home and because it was uneconomical to continue administering the trust. (§ 15408.)

The tenth examiner's note questioned the benefit to Beneficiary from the trips to Jamaica, London, and Sea World. Trustee responded that Beneficiary's family was from Jamaica and Trustee thought Beneficiary would benefit from visiting her family.

7

G.     EVIDENTIARY HEARING

1.     *INCOMPLETE REPORTER'S TRANSCRIPT*

The reporter's transcript provided in the record is incomplete.  The evidentiary hearing took place on November 12, 13, and 14, 2013.  The reporter's transcript omits the proceedings from November 12.  The transcript begins on November 13 with Mother resuming direct examination.

2.     *MOTHER'S TESTIMONY*

Beneficiary received social security/disability benefits during the life of the trust. The amount of benefits ranged from $297 to $730.  At the time of the evidentiary hearing, Mother no longer had the $15,574.85 that was distributed for the purchase of a house.  Mother did not use the money to purchase a house.  Instead, Mother used some of the money to purchase various items for Beneficiary, such as a bed, a closet organizer, a television stand, and a DVD player.  Mother also paid $1,000 to an attorney to represent Beneficiary at meetings with the school district concerning Beneficiary's individualized education program.  Some of the $15,574.85 was used to pay for rent on the family's residence, groceries, gasoline, utility bills, and car repairs.

Mother estimated that she and Beneficiary traveled to Jamaica four times during the life of the trust; they also traveled to England, Hawaii, and Washington D.C. Money from the trust was used to pay for the vacations, which included Mother, Beneficiary, and Beneficiary's grandmother or great-aunt.  Mother explained that they visited family in Jamaica and England.  Mother believed the trips were beneficial to Beneficiary because they provided "good social experience[s]."  The trip to Hawaii was

8

for a wedding for Mother's best friend.  Mother believed Beneficiary benefitted from the trip.  The trip to Washington D.C. was also for a wedding.

### 3.  *TRUSTEE'S TESTIMONY*

Trustee specialized in special needs trusts.  Trustee never looked at the trust instrument to determine her authority because "[i]t's a cookie-cutter special needs trust."  Trustee "treated it like any special needs trust."  In Trustee's experience, 75 percent of special needs trusts are court supervised.  Trustee did not file the required accountings with the court.  Trustee was required to have a license to act as a trustee, but she did not have a license from 2008 to 2010.

Trustee explained that her minimum fee for serving as a trustee, per trust, per month was $350.  Trustee's hourly rate was $100.  The $350 was for "time paying the bills, opening the file, assessing the client, those sorts of things."  Trustee's time records in this case were inaccurate, but Trustee believed it was clear from the records that Trustee paid the required bills and met with Beneficiary every month; therefore, Trustee charged her minimum flat rate fee of $350 per month; the bills paid by Trustee consisted of things such as car insurance.  Trustee did not receive court authorization for the payment of compensation made to herself.

Trustee did not believe Mother misused the money from the trust.  Trustee explained that Mother provided Trustee with receipts for the vacations, television, and a treadmill purchased with money from the trust.  Trustee explained that, because Mother was a full-time student, it was not practical for Mother to pay for vehicle-related expenses.  In regard to the $15,574.85 distribution to Mother, Trustee did not follow-up

9

with Mother to determine if the money was used to purchase a house. At the evidentiary hearing, Trustee considered the trust to be terminated because she distributed the remaining funds in the trust. Trustee decided to terminate the trust because the amount of funds "was getting so small."

### 4. *DANIEL G. STUBBS'S TESTIMONY*

Daniel G. Stubbs had been a professional fiduciary for 29 years. Stubbs had worked on 35 special needs trusts. Stubbs believed the trust instrument was the reference a trustee should use for understanding his/her authority. Stubbs opined that the trust disbursements made by Trustee fell within the parameters of the trust. Stubbs opined that it was reasonable to pay for a vehicle with trust funds because Beneficiary needed to be transported. Stubbs explained that in his practice when he intends to make a large purchase with trust funds he seeks prior court approval. Stubbs would have sought prior court approval before distributing the final $15,574.85 to Mother.

### H. TENTATIVE RULING

The probate court issued a tentative ruling. The probate court found Trustee breached her fiduciary duty by failing to notify the court of her lack of a license from 2008 to 2010, and by not acting with good faith toward Beneficiary in making some of the distributions.

The court approved of the accounting subject to a surcharge of $93,036.75. The surcharge was comprised of the following: (1) $1,250 paid for rent; (2) $34,229.55 paid for Trustee's fees; (3) $17,577.85 paid for living expenses; (4) the $15,574.85 final distribution to Mother; and (5) $24,404.50 for vehicle expenses.

10

The court wrote, "With regard to the surcharge entry hereinabove of $17,577.85 [for living expenses], it was calculated by allowing $200 for the Thanksgiving trip, $5,000 more for other travel, $51 for 'Bill's Special Kids,' $67.50 for bike assembly, and $1,000 in reasonable case manager expenses . . . . Those items add up to $6,318.50, and subtracting that sum from the total of 'living expense' items ($23,896.35 . . . ), we have a surcharge for that category of $17,577.85.

"If [T]rustee had filed regular accountings for approval of the court, as was required, she might have had the opportunity to learn from a small, early surcharge and could have changed course in order to have avoided further liability."

I.     STATEMENT OF DECISION

The probate court issued a statement of decision that included much of the same information as the tentative ruling, but which also responded to concerns that Trustee had expressed. The probate court wrote, "[Trustee] inquires as to whether the breaches of fiduciary duty caused actual loss to the beneficiary, and whether [T]rustee profited from such breaches. Certainly actual loss was caused: The beneficiary proved that the trustee expended various funds without sufficient care or justification, and without reference to the text or purpose of the trust; and once that money is gone, of course legal damages result."

In regard to Trustee profiting, the probate court wrote, "As a practical matter [Trustee] did profit, because she placated [B]eneficiary's mother by acceding to her requests for money, which then gave her an open road to charge substantial fees with no objection from the mother." The probate court explained that a parent has a duty to

11

support his/her child, and the child's funds cannot be used to support the child except in specific circumstances. (Fam. Code, § 3900.)

In regard to Trustee's compensation, the probate court wrote, "The trustee questions whether she should be denied all fees. The answer is yes; she gave away some of the beneficiary's money, failed to account for years, did not seek court approval for anything, and at the end just wrote a check for $15,574.85 to the beneficiary's mother so she could close her file. This conduct justifies a surcharge, not a fee."

J.     TRUSTEE'S OBJECTIONS

Trustee objected to the tentative ruling and statement of decision. Some of the objections raised by Trustee were: (1) the probate court allegedly failed to make a finding concerning whether Trustee's breach of duty "directly caused actual loss to the Trust," because the money spent from the trust was spent for Beneficiary's benefit; (2) the probate court failed to make a finding concerning whether Trustee abused the discretion granted to her by the trust instrument; and (3) the probate court failed to identify the "standard of care applied by the Court in evaluating expenditures."

K.     JUDGMENT

The probate court overruled all of Trustee's objections and ruled that the "Statement of Decision stands." The probate court entered a judgment approving the First Report subject to a surcharge of $93,036.75.

**DISCUSSION**

A.     <u>LEGAL STANDARD</u>

        1.     *CONTENTION*

Trustee contends the probate court applied an incorrect legal standard. It is unclear to what portion of the proceedings Trustee believes an incorrect legal standard was applied, e.g., the examination of the accounting, the finding of breach, etc. As a result, we address both the approval of the accounting and the breach/surcharge aspects of the proceedings.

        2.     *STANDARD OF REVIEW*

We examine whether the probate court abused its discretion by applying an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156.)

        3.     *APPROVAL OF THE ACCOUNTING*

At a contested hearing on an accounting, the trustee bears the burden of establishing the correctness of the accounting that the "disbursements were correct in amount and that the disbursements claimed were for proper purposes." (*Neel v. Barnard* (1944) 24 Cal.2d 406, 420; see also *McLaughlin's Estate* (1954) 43 Cal.2d 462, 465-466; see also *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1316, fn. 4.)

In the probate court's statement of decision it wrote, "The applicable law is well-discussed in . . . Matthew Bender, *California Trust Litigation*, at sections 9.31 *et seq.*" That treatise provides, "When a trustee submits a financial account to the court for approval and a beneficiary objects to the account, the trustee has the burden of proving

13

by satisfactory evidence the charges and credits claimed by the trustee in the account [*Purdy v. Johnson* (1917) 174 Cal. 521, 527-528]. This point can be critical. The trustee has the burden of proving the accuracy of the account, and cannot shift that burden to the beneficiary without an evidentiary showing." (*Matthew Bender Practice Guide: California Trust Litigation* § 9.31.) The treatise cited by the probate court provides a correct statement of the law, i.e., that the trustee bears the burden of proving the correctness of the accounting. (*Neel v. Barnard*, *supra*, 24 Cal.2d at p. 420.)

In the statement of decision, the probate court wrote, "The court has simply reviewed each expenditure and applied the applicable law and burden of proof, in light of the evidence at trial." Given that the probate court referenced the proper standard, it appears the court applied the proper law when analyzing the expenditures listed in the accounting. There is nothing indicating that the probate court applied a standard other than the one correctly cited in the statement of decision. Accordingly, we conclude the probate court applied the correct legal standard when granting partial approval of the accounting.

4.    *SURCHARGE*

When beneficiaries raise objections to an accounting, they commonly raise surcharge claims against the trustees for " 'purported acts of misconduct, neglect, waste, mismanagement or other breach of fiduciary duty.' " (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 991.) The request for a surcharge is an affirmative allegation, which results in the burden of proof being upon the beneficiary/objector. (*In re Kirkpatrick's Estate* (1952) 109 Cal.App.2d 709, 713; Evid. Code, § 500.) The beneficiary has the

14

burden of proving the existence of a fiduciary duty and the fiduciary's breach. The burden then shifts to the trustee to justify his/her actions. (*LaMonte v. Sanwa Bank California* (1996) 45 Cal.App.4th 509, 517.) A breach by the trustee can result in the trustee being charged for the loss to the trust estate. (Prob. Code, § 16440, subd. (a)(1).)

In the probate court's statement of decision it wrote, "The applicable law is well-discussed in . . . Matthew Bender, *California Trust Litigation*, at sections 9.31 *et seq.*" That treatise provides, "If a beneficiary objects to an account on the basis of a breach of trust by the trustee . . . , the beneficiary has the burden to prove [citation]: [¶] The existence of the duty that beneficiary alleges the trustee breached; [¶] That the trustee breached the duty; and [¶] The damages claimed by the beneficiary as a result of the trustee's breach of the duty." (*Matthew Bender Practice Guide: California Trust Litigation* § 9.31.)

The treatise cited by the probate court includes an accurate statement of the law in that it sets forth the same concepts we have set forth *ante*. In applying the law to the evidence, the probate court wrote, in its statement of decision, "[T]he court finds that [Beneficiary] met her burden of proving that [T]rustee breached her fiduciary duty . . . . In addition, [B]eneficiary proved that trustee breached her duty by failing to notify the court of her unlicensed status from 2008 to 2010. [B]eneficiary also met her burden of proving damages, with regard to certain of the sums disbursed without court authority."

The probate court's statement of decision reflects it required Beneficiary to prove duty, breach, and damages. Thus, the probate court applied the correct legal standard in

ruling on the surcharge portion of the case. Accordingly, we conclude the probate court did not err.

5. *ABUSE OF DISCRETION STANDARD*

Trustee contends the probate court should have applied an abuse of discretion or bad faith standard. It appears Trustee believes this standard should have been applied in the breach/surcharge portion of the proceedings.

If a trustee is granted discretionary power, the trustee must exercise that discretion in a reasonable manner. (§ 16080.) If a trustee is granted "absolute," "sole," or "uncontrolled" discretion, then the trustee must "act in accordance with fiduciary principles and shall not act in bad faith or in disregard of the purposes of the trust." (§ 16081, subd. (a); *Penny v. Wilson* (2004) 123 Cal.App.4th 596, 603.) In other words, when granted absolute discretion, "[t]he trustee is still required to avoid arbitrary action and to use [her] best judgment. A grant of absolute discretion in dealing with trust assets may entitle a trustee to speculate, concentrate, buy and sell for appreciation, [and/or] assume large risks. It does not authorize a trustee to neglect [the] trust or abdicate [her] judgment." (*Coberly v. Superior Court for Los Angeles County* (1965) 231 Cal.App.2d 685, 689.)

Trustee, in support of her contention, cites a case that provides, "It is well settled that the courts will not attempt to exercise discretion which has been confided to a trustee unless it is clear that the trustee has abused his discretion in some manner." (*In re Marre's Estate* (1941) 18 Cal.2d 184, 190.) Trustee also relies on a second case that provides, "Whenever a trust properly comes under judicial supervision, it is the general

16

rule that where a trustee is given discretionary powers, the court will not control the trustee's actions exercised pursuant thereto merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere." (*In re Flannery's Estate* (1969) 269 Cal.App.2d 890, 896.)

The "bad faith" standard relates to trustees who have been given absolute discretion, which is demonstrated by the use of the term "bad faith" in the statutory language, i.e., "shall not act in bad faith." (§ 16081, subd. (a).) In the instant case, the trust instrument did not grant trustee absolute or sole discretion.

The trust instrument provides, "The Trustee may distribute from such common fund to or for the benefit of the Beneficiary during her lifetime, such sums and at such times as the Trustee, in [her] discretion, determines appropriate and reasonably necessary for the Beneficiary's Special Needs. In making distributions to the Beneficiary for her Special Needs, the Trustee shall take into consideration the applicable resource and income limitations of the public assistance programs for which the Beneficiary is eligible, and the duties of any persons legally obligated to support the Beneficiary." The Trust instrument further provides, "All payments made under this Trust must be reasonably necessary in providing for this Beneficiary's special needs, as defined herein."

The plain wording of the trust instrument grants Trustee reasonable discretion (§ 16080), but not unlimited or sole discretion (§ 16081, subd. (a)). The plain words of the trust instrument repeat the word "reasonably" in reference to discretion, while omitting the words sole, uncontrolled, or absolute in reference to discretion.

17

Accordingly, we conclude the "bad faith" standard was not applicable in this case because Trustee was granted reasonable discretion (§ 16080); Trustee was not granted sole discretion (§ 16081, subd. (a)).

Next, in regard to the abuse of discretion standard, it could arguably apply under either level of trustee discretion—reasonable or absolute. "Abuse of discretion" can be defined as acting in an arbitrary manner (*Estate of Ruchti* (1993) 12 Cal.App.4th 1593, 1601), which is closer to the test for a trustee with absolute discretion (*Coberly v. Superior Court for Los Angeles County*, *supra*, 231 Cal.App.2d at p. 689 ["trustee is still required to avoid arbitrary action"]). However, "abuse of discretion" can also be defined as acting in an irrational manner (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 804), which is arguably closer to the test for a trustee with reasonable discretion (§ 16080 [discretion "shall be exercised reasonably"]).

As explained *ante*, the trust did not grant Trustee absolute discretion, as a result the "arbitrary" definition of "abuse of discretion" is not applicable in this case. To the extent "abuse of discretion" is defined as meaning Trustee has to act in a rational manner (*Ajamian v. CantorCO2e, L.P.*, *supra*, 203 Cal.App.4th at p. 804), that is the equivalent of the reasonableness standard the probate court applied, which is found in section 16080, e.g., discretion "shall be exercised reasonably." In other words, the probate court examined whether Trustee acted reasonably (§ 16080), which has the same practical effect of examining whether Trustee abused her discretion by acting irrationally.

18

For example, the probate court found Trustee breached her fiduciary duty by "expend[ing] various funds without sufficient care or justification, and without reference to the text or purpose of the trust." We understand the probate court's findings as concluding that Trustee acted unreasonably in exercising her discretion (§ 16080). This inference is supported by the probate court's statement, during the evidentiary hearing, "I think the Court is entitled to ask whether the disbursements made in various categories were reasonable." The same result in the case would occur if the standard were labeled an abuse of discretion, with "abuse of discretion" being defined as an irrational act. Accordingly, to the extent Trustee chooses to label the standard an "abuse of discretion" standard with rationality as the test, rather than a "breach of fiduciary duty" with reasonableness as the test, we see little difference in terms of the application. As a result, we are not persuaded that the probate court erred.

6. *SUBSTANTIAL EVIDENCE*

Within the "incorrect legal standard" contention, Trustee asserts that several of the surcharges are not supported by substantial evidence. For example, Trustee asserts the rent surcharge is not supported by substantial evidence because Beneficiary "presented no evidence to show there was an 'abuse of discretion.' " Trustee's briefing leaves us unclear as to whether Trustee intended to use these arguments (1) to illustrate that an improper legal standard was allegedly applied, or (2) to raise a separate issue concerning substantial evidence. Because Trustee has included the arguments within her "incorrect legal standard" contention, we infer that they are intended to serve as illustrations of the alleged incorrect legal standard. (Cal. Rules of Court, rule

19

8.204(a)(1)(B) [separate headings].) Therefore, we do not address the issue of substantial evidence at this point.

### B. SUBSTANTIAL EVIDENCE

#### 1. *CONTENTION*

Trustee contends that the probate court erred by ordering Trustee be surcharged. Trustee asserts that the question before the probate court was not whether the probate court believed the disbursements to be reasonable, but whether Trustee could reasonably believe the disbursements were reasonable. Trustee contends, "The record below is devoid of any evidence that [Trustee] abused her discretion or exercised it in bad faith. There were certainly differences of opinion between what [Beneficiary] (and the Probate Court) believed was reasonable and what [Trustee] believed was reasonable. But, as set forth above, differences of opinion on the reasonableness of a disbursement cannot form the basis for a surcharge against the trustee."

Much of Trustee's argument repeats the same ideas that Trustee set forth in the prior contention concerning the alleged application of an incorrect legal standard. Within the instant contention, Trustee asserts, "The record below is devoid of any evidence that [Trustee] abused her discretion or exercised it in bad faith." We interpret Trustee's contention as asserting there is a lack of substantial evidence to support the finding that she breached her fiduciary duty.

Generally, this court will not examine a substantial evidence issue when provided with an incomplete transcript of the evidentiary hearing's oral proceedings. (*In re Estate of Fain*, *supra*, 75 Cal.App.4th at pp. 987, 992.) The reporter's transcript in the

instant case is missing the first day of the evidentiary hearing; it begins on the second day with Mother resuming her direct examination. Nevertheless, our review of the record reflects that within this partial reporter's transcript there is substantial evidence to support the probate court's findings. Accordingly, we will address the issue. (*Sanders v. Walsh* (2013) 219 Cal.App.4th 855, 874.)

### 2. *STANDARD OF REVIEW*

We apply the substantial evidence standard of review. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 911, 916; *Penny v. Wilson*, *supra*, 123 Cal.App.4th at p. 603.) " 'Under the substantial evidence standard of review, "we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment." ' " (*In re Estate of Kampen* (2011) 201 Cal.App.4th 971, 992.)

### 3. *LAW*

In regard to duty, "the trustee has a duty to administer the trust according to the trust instrument" (§ 16000) and "a duty to take reasonable steps under the circumstances to take and keep control of and to preserve the trust property" (§ 16006). The trustee is required to exercise her discretion in a reasonable manner. (§ 16080.) "If the trustee commits a breach of trust, the trustee is chargeable with . . . [¶] . . . Any loss or

21

depreciation in value of the trust estate resulting from the breach of trust, with interest." (§ 16440, subd. (a)(1).)

### 4. *TRUST INSTRUMENT*

The trust instrument provides, "The intent and purpose of this trust is to provide a discretionary, spendthrift trust, to supplemental public resources and benefits when such resources and benefits are unavailable or insufficient to provide for the Special Needs of the Beneficiary. As used in this instrument, the term 'Special Needs' means the requisites for maintaining the Beneficiary's good health, safety, and welfare when, in the discretion of the Trustee, such requisites are not being provided by any public agency, office, or department of the State of California, or of any other state, or of the United States of America. The funds of the trust may be used as an emergency or backup fund secondary to public resources. Special Needs include without limitation special equipment, programs of training, education and habilitation, travel needs, and recreation, which are related to and made reasonably necessary by this Beneficiary's disabilities. This is not a trust for the support of the Beneficiary. All payments made under this Trust must be reasonably necessary in providing for this Beneficiary's special needs, as defined herein."

As explained by the trust instrument, the trust estate is to be used for necessary expenses related to Beneficiary's special needs, e.g., the trust instrument provides, "which are related to and made reasonably necessary by this Beneficiary's disabilities." The trust estate was not to be used for Beneficiary's general support, e.g., the trust instrument provides, "This is not a trust for the support of the Beneficiary."

22

Accordingly, Trustee had a duty to ensure that distributions were directed toward items that were made necessary due to Beneficiary's disabilities.

5.    *RENT*

We examine whether there is substantial evidence that Trustee breached her duty by paying Beneficiary's household rent from the trust estate. The trust instrument was an exhibit at trial. The trust instrument reflects the trust estate is to be used for expenses made necessary by Beneficiary's disabilities, and not for the general support of Beneficiary. The residential rent payment of $1,250 was made on October 25, 2007. Mother rented a home in 2007 for $1,250 per month.

Beneficiary's need for a place to live was not made necessary by her disabilities. Rather, shelter is a basic need for people regardless of any disability. Trustee testified, "I wasn't making any food, clothing, and shelter payments." Trustee then explained that she only needed to make one rent disbursement because Mother typically "met those basic needs."

Trustee seemingly understood that the trust estate was not to be used for general support items such as shelter. Nevertheless, Trustee made a disbursement for rent. Rent is a general support item, and such expenditures are expressly disallowed by the trust instrument. Accordingly, the finding that Trustee breached her fiduciary duty by making a disbursement for rent is supported by substantial evidence. (See § 16000 [duty to administer trust according to the trust instrument].)

Trustee asserts that the trust instrument permits Trustee to invest in residential real estate, therefore, it was permissible to make a disbursement from the trust estate for

23

a rent payment. The trust instrument provides, "To carry out the purposes of this trust and subject to any limitations stated elsewhere in this instrument, the Trustee is vested with the following powers . . . [¶] . . . [¶] . . . To invest . . . in residential real property, vehicles, and other tangible personal property which may be used and occupied by the Beneficiary and her family without the payment of any rent or other expense by any person providing care to [Beneficiary]. The purchase or sale of the personal residence of the Beneficiary must be approved in advance by a court of competent jurisdiction over the Trust."

As set forth *ante*, one of the limitations on Trustee's power to make disbursements is that the expense must be "made reasonably necessary by this Beneficiary's disabilities." As explained *ante*, rent is a general support item, not an expense made necessary by Beneficiary's disabilities. Further, rent is not an investment in real property. Accordingly, we are not persuaded that Trustee's investment power authorized her to disburse money for a rent payment.

5.      *VEHICLES*

Between February 2005 and September 2011, Trustee made disbursements totaling $24,404.50 for vehicle-related expenses. The expenses were for maintenance, repairs, registration, and insurance. Mother drove a 1998 Nissan and a Buick Rendezvous. Mother was convicted of driving under the influence after crashing and totaling one of the cars in 2007.

24

The trust purchased at least one of the vehicles.[2] Trustee spoke with Mother about whether the trust or Mother should purchase the vehicle. Trustee decided that the trust should purchase the vehicle because it was "not practical" for Mother to purchase the vehicle due to Mother being a full-time student. Trustee considered the amount of time Trustee would bill in fees for handling the car-related expenses. However, Trustee did not have an estimate as to how much those fees would cost the estate.

Trustee testified that Mother "was a single mother, working, trying to go through [nursing] school." After Mother dropped Beneficiary off at school, Mother went to nursing school. Beneficiary resided at her father's home approximately three days per week, and slept at his home on those days.

The evidence reflects that the cars were standard transportation for Mother and Beneficiary. There is nothing about the car that is modified for Beneficiary's needs, nor is there anything about Beneficiary's disability that requires a car. Rather, Trustee decided that the trust would purchase and maintain the vehicle because it was not practical for Mother to bear the expense due to Mother being a full-time student. Trustee's reason for using the trust estate for vehicle expenses was not reasonable given that the vehicle expenses were not made reasonably necessary by Beneficiary's disability.

---

[2] We infer from context in the reporter's transcript, in particular a line that reads, "And just to refresh our recollection from yesterday," that the vehicles were discussed on the first day of the evidentiary hearing, for which we do not have a transcript. As a result, there is a lack of clarity concerning some of the facts related to the vehicles.

Trustee contends she had the authority to purchase a vehicle and therefore the probate court erred. The trust instrument provides, "To carry out the purposes of this trust and subject to any limitations stated elsewhere in this instrument, the Trustee is vested with the following powers . . . [¶] . . . [¶] . . . To invest in . . . vehicles, and other tangible personal property which may be used and occupied by the Beneficiary and her family without the payment of rent or other expense by any person providing care to [Beneficiary]."

As set forth *ante*, one of the limitations on Trustee's power to make disbursements is that the expense must be "made reasonably necessary by this Beneficiary's disabilities." The vehicle was maintained at the trust's expense because Trustee did not think it was practical for Mother to bear the cost due to Mother being a full-time student. In other words, the car was not made necessary by Beneficiary's disability; rather, Trustee determined the car expenses were made necessary due to Mother being a student. Because Trustee did not exercise her authority within the limits of the trust, Trustee acted unreasonable and breached her fiduciary duty. (See § 16000 [duty to administer trust according to the trust instrument].)

6.     *FINAL DISTRIBUTION*

The probate court surcharged Trustee for the final distribution to Mother of $15,574.85. Trustee testified that she spoke to Beneficiary's attorney and "together we came to the conclusion that we were wasting money, that there would be nothing left for a down payment on a house," so Trustee decided to disburse the last $15,574.85 to

26

Mother to purchase a house. After distributing the money, Trustee did not follow-up with Mother to determine if Mother used the money to purchase a house.

Mother had asked for money to purchase a home, but did not realize the $15,574.85 was for the purpose of purchasing a home. As a result, Mother commingled the funds with her personal funds. Mother spent the entire $15,574.85, but did not purchase a house. Mother used the money for food, gasoline, utility bills, and car repairs. Mother also purchased goods for Beneficiary, such as a bed, a closet organizer, a television stand, and a DVD player.

As explained *ante*, one of the limitations on Trustee's power to make disbursements is that the expense must be "made reasonably necessary by this Beneficiary's disabilities." Trustee testified, "I wasn't making any food, clothing, and shelter payments," which indicates Trustee understood general living expenses were not to be paid by the Trust. Nevertheless, much of $15,574.85 was used to pay for general living expenses, such as food and utilities. The goods purchased for Beneficiary do not appear to be necessary for her disabilities. Rather, they appear to be general household items. Because these expenses were not made reasonably necessary by virtue of Beneficiary's disabilities, Trustee breached her fiduciary duty by making the $15,574.85 disbursement, with the exception of $1,000, discussed in the paragraph *post*. (See § 16000 [duty to administer trust according to the trust instrument].)

Mother testified that approximately $1,000 of the $15,574.85 was given to Beneficiary's attorney who advocated for Beneficiary at a meeting concerning Beneficiary's individualized education program. The attorney assisted Beneficiary in

27

obtaining "psychoeducational testing that was used to help get her other resources in the classroom." The probate court found expenses related to Beneficiary's education were reasonable. We conclude this $1,000 educational expense that was lumped into the $15,574.85 disbursement was a proper use of the trust estate. Accordingly, we will reduce the surcharge by $1,000.

### 7.    *LIVING EXPENSES*

The probate court surcharged Trustee $17,577.85 for improper distributions related to living expenses. Some of the disbursements that the probate court found to be improper concerned case management, long distance telephone bills, clothing, vacations, and Christmas presents.

### a.    Case Management

In regard to case management, the probate court found $1,000 was reasonable for case management expenses. Trustee's accounting reflects disbursements were made for visits by the case manager on an almost monthly basis. The charges range from $6.25 for a visit in December 2005 to $132.75 for a visit in October 2010. The case manager visits in 2010 and 2011 were regularly in the range of $130, while in other years they had been in the range of $10 to $40 per visit. In total, Trustee spent approximately $2,580 on case management.[3] Given the lower available prices, such as $40, repeatedly spending approximately $130 per visit appears excessive. Accordingly, substantial

---

[3] Trustee asserts the case management expenses totaled $3,323.75.

28

evidence supports the finding that Trustee breached her duty to preserve trust property (§ 16006), and that $1,000 was a reasonable amount for case management fees.

### b.       Long Distance Bills and Clothing

One of the limitations on Trustee's power to make disbursements is that the expense must be "made reasonably necessary by this Beneficiary's disabilities." The trust estate is not to be used for Beneficiary's general support. Clothing is a general expense. For example, Trustee testified, "I wasn't making any food, clothing, and shelter payments." Trustee also testified that clothing was a basic need and therefore Trustee typically only made disbursements for holiday clothing. Trustee's testimony reflects an understanding that the trust estate was to be used for Beneficiary's special needs—not her general support—and that clothing was a general support item because it is basic human need. As a result, Trustee breached her duty to follow the terms of the trust by making disbursements for Beneficiary's clothing. (See § 16000 [duty to administer trust according to the trust instrument].)

Similarly, the long distance telephone bills were a general household expense. Mother's family resides in Jamaica. It can reasonably be inferred that the long distance telephone bills were for keeping in contact with family, rather than any particular need related to Beneficiary's disability. As a result, Trustee breached her duty to follow the terms of the trust by making disbursements for long distance telephone bills. (See § 16000 [duty to administer trust according to the trust instrument].)

### c. Vacations

The probate court allowed $200 for a Thanksgiving trip and $5,000 "for other travel." Trustee spent $200 for the Thanksgiving trip and approximately $17,305 on travel to Jamaica, London, and Hawaii.[4] Mother estimated that she and Beneficiary travelled to Jamaica four times during the life of the trust; they also travelled to England and Hawaii. Money from the trust was used to pay for the vacations, which included Mother, Beneficiary, and Beneficiary's grandmother or great-aunt. Mother explained that they visited family in Jamaica and England. The trip to Hawaii was for a wedding for Mother's best friend. Mother believed the trips were beneficial to Beneficiary because they provided "good social experience[s]." Mother testified that the trust paid for Beneficiary's daycare before and after school because it was "a good social experience" for Beneficiary, because it provided Beneficiary an opportunity to interact with people outside of a special education environment.

Given that the trust was paying for Beneficiary to have social experiences before and after school, the probate court could reasonably conclude that trips to Jamaica, England, and Hawaii were not necessary for Beneficiary to have social experiences. Accordingly, we conclude the probate court's finding that $5,200 was a reasonable amount for travel expenses is supported by substantial evidence and that spending more on such travel was not a reasonable use of trust assets. (See § 16006 [duty to control and preserve trust property].)

---

[4] Trustee asserts the travel expenses totaled $16,805.92.

30

###### d. Presents

Trustee made disbursements for Christmases and birthdays. One of the limitations on Trustee's power to make disbursements is that the expense must be "made reasonably necessary by this Beneficiary's disabilities." Trustee testified that she did not make disbursements for clothing except "once in a while for holidays." It can be inferred from the record that Trustee allowed impermissible disbursements for the sake of Beneficiary enjoying her birthdays and Christmases. For example, $265 was spent on a birthday trip to Sea World. However, disbursements for Beneficiary's general enjoyment are not permitted by the terms of the trust. Under the trust, disbursements are to be made for expenses "related to and made reasonably necessary by this Beneficiary's disabilities." Because the presents were not reasonably necessary, substantial evidence supports the probate court's finding that Trustee breached her fiduciary duty. (§ 16000.)

###### e. Conclusion

In sum, with the exception of $1,000, the probate court's findings are supported by substantial evidence.

#### C. COMPENSATION

Trustee contends the probate court erred by disallowing the entirety of her compensation.

We apply the abuse of discretion standard of review. (*Finkbeiner v. Gavid* (2006) 136 Cal.App.4th 1417, 1421-1422.) "[I]f the trust instrument provides for the trustee's compensation, [then] the trustee is entitled to be compensated in accordance

31

with the trust instrument." (§ 15680, subd. (a); *Thorpe v. Reed* (2012) 211 Cal.App.4th 1381, 1391-1392.) However, in certain situations the probate court may allow greater or lesser compensation. One of the situations is "[w]here the compensation in accordance with the terms of the trust would be inequitable or unreasonably low or high." (§ 15680, subd. (b)(2).) California Rules of Court, rule 7.776 provides a list of eight factors that a court may consider when determining a trustee's compensation. One of the factors is "[t]he success or failure of the trustee's administration." (Cal. Rules of Court, rule 7.776(2).)

The trust instrument provides, "The Trustee shall receive just and reasonable compensation, to be paid from the Trust, for [her] services in an amount to be determined by the Court on the occasion of the Trustee's court accountings or such other times as that issue may be brought before the Court with jurisdiction over the Trust. The Trustee may receive interim compensation on account, in accordance with the order of the Court with jurisdiction over the Trust."

Trustee did not file the required accountings with the court because she was unaware the trust was court supervised. Trustee did not look at the trust instrument to understand her authority under the trust. Trustee continued to serve as trustee of the trust when her professional fiduciary license was suspended from 2008 to 2010. Trustee did not keep accurate time records for her fees. Trustee breached her fiduciary duty by making disbursements for rent, clothing, vehicle expenses, and vacations. Trustee also breached her fiduciary duty by making a final distribution to Mother in the amount of

32

$15,574.85, which was then commingled with Mother's personal funds and primarily spent on living expenses and household items.

Given Trustee's mismanagement of the trust estate, failure to make the required court filings, and continued service when she lacked a license, the probate court could reasonably conclude that Trustee was not entitled to compensation because any compensation for the service rendered would be inequitable due to Trustee's multiple failures in administering the trust (Cal. Rules of Court, rule 7.776(2)).

## DISPOSITION

The total amount of the surcharge is modified to $92,036.75.  In all other respects, the judgment is affirmed.  Respondent is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(4).)

CERTIFIED FOR PUBLICATION


MILLER
J.


We concur:

McKINSTER
Acting P. J.


CODRINGTON
J.


33