Filed 12/21/20  Ellis v. Hurley CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANTON ELLIS, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DAMIAN HURLEY, a Minor, etc., et. al., <br><br> Defendants and Respondents. | B300769 c/w B300790, B300798, B3000799, B300804 & B300806 <br><br> (Los Angeles County Super. Ct. Nos. 19STPB01612, 19STPB01614, 19STPB01615, 19STPB01622, 19STPB01623 & 19STPB01624) <br><br> **ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING** <br> [There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on November 20, 2020 is modified as follows:

1.      On page 3, the second full paragraph that begins, "Kira was born in 1988."  That sentence is deleted and replaced with: "Kira was born in 1998."

2.      On page 4, delete footnote 4 and replace it with a new footnote 4, that reads:  "As of the filing of the petition, only Kira and Lucy of the four grandchildren had reached 18.  The record does not reflect whether the trustee made any distributions to Kira or Lucy."

[There is no change in judgment.]

The petition for rehearing is denied.

RUBIN, P. J.          BAKER, J.          KIM, J.

Filed 11/20/20  Ellis v. Hurley CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| ANTON ELLIS, a Minor, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DAMIAN HURLEY, a Minor, etc., et. al., <br><br> Defendants and Respondents. | B300769 c/w B300790, B300798, B3000799, B300804 & B300806 <br><br> (Los Angeles County Super. Ct. Nos. 19STPB01612, 19STPB01614, 19STPB01615, 19STPB01622, 19STPB01623 & 19STPB01624) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Juarez, Judge. Reversed and remanded with directions.

Holland & Knight, Vivian L. Thoreen, Roger B. Coven, Stacie L. Chau; Carico MacDonald Kil & Benz, Christopher D. Carico, William G. Benz and Amber N. Morton for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Adam F. Streisand, Golnaz Yazdchi, Valerie E. Alter and Meghan K. McCormick for Defendants and Respondents Elizabeth Hurley and Damian Hurley.

Keystone Law Group, Sharon S. Kerendian, Lindsey F. Munyer, Avi I. Pariser; Law Offices of James A. Bush and James A. Bush for Defendant and Respondent Kira Kerkorian.

———————————————

A trustee, granted discretion to interpret an irrevocable trust, construed the trust's clause designating its beneficiary in a manner consistent with current statutory rules of construction. The trial court concluded the trustee's construction was unreasonable. We disagree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from the trial court's resolution of a trustee's six petitions for instructions in six identical probate matters, arising out of six virtually identical trusts. More simply, it is a family dispute. The ultimate issue for us to decide is whether there are two or four grandchildren identified as beneficiaries in the trusts.

### 1. The Family

The settlor/trustor of the trusts is Peter S. Bing.[1] In August 1980, he created six irrevocable trusts for the benefit of his first six as-yet-unborn grandchildren. We will discuss the relevant terms of the trusts in the next section.

As of the time of the trustee's probate petitions in 2019, Peter had two children, Mary and Stephen, and four grandchildren. Peter's daughter, Mary, is the mother of Lucy and Anton. There is no dispute that Lucy and Anton are grandchildren entitled to benefits under the trusts. Peter's son,

---

[1] To avoid confusion, we refer to the family members by their first names; we intend no disrespect.

Stephen, is the father of Kira and Damian.[2]  The rights of Kira and Damian under the trusts are at issue.[3]

The petitions which challenged the rights of Kira and Damian under the trusts did not concede their paternity, and the trial court did not resolve the question.  Stephen had claimed he had fathered both children.

Kira was born in 1988.  She asserts that, at the time of her conception, her mother and Stephen were involved in a romantic relationship, but were unmarried.  Their relationship ended prior to Kira's birth.  Kira was raised by her mother and her mother's husband.  At some point, it was established that the man who raised her was not her biological father.  After that man died, Stephen contacted Kira and they began communicating regularly.  Stephen signed documents declaring he was Kira's biological father.  At one point, Stephen expressed an interest in formally adopting her, although he did not do so.

Stephen's son Damian was born in 2002.  His mother lives in England.  She asserts that, although she and Stephen were never married, she and Stephen had joint legal custody of Damian since his birth.  She claims Stephen acknowledged Damian as his son, has been judicially established as Damian's father, and has provided financially for Damian's support.  Damian was raised by his mother, in England.

---

[2]     Stephen died by suicide while this appeal was pending.

[3]     For convenience, we sometimes refer to Lucy, Anton, Kira and Damian as "grandchildren," even though Kira's and Damian's status as grandchildren under the trusts is contested.

## 2.    *The Grandchildren Trusts*

The case involves the construction of six virtually identical irrevocable trusts Peter created to benefit his first six grandchildren.  The beneficiary of the first trust is "the first born grandchild of Peter S. Bing."  The beneficiary of the second trust is "the second born grandchild of Peter S. Bing," and so forth, through "the sixth born grandchild."  The trusts were each initially funded with $15,000.  Their current value or values is unclear.

Under the trusts, the trustee has discretion to make distributions of income and principal when the respective trust beneficiary reaches the age of 18.[4]  Each trust terminates on October 31, 2020, at which time the entire principal and all undistributed income shall be distributed to the beneficiary.

As Peter has fewer than six grandchildren—either two or four, depending on the resolution of this case—the question arises as to the distribution of the leftover trusts—that is, those trusts whose primary beneficiary is a grandchild never to be born.  The trusts do not expressly provide for this scenario.  However, the parties assume a related provision governs.  Specifically, there are provisions for distribution of each trust's estate if the identified grandchild beneficiary is not living on October 31, 2020:  first, to any successor appointed by the beneficiary; if none, to the beneficiary's "living lawful issue"; if none, to be equally divided "among all of the then living grandchildren of Peter S. Bing other than the first six."  Finally,

---

[4]    As of the filing of the petition, only Lucy of the four grandchildren had reached 18.  The record does not reflect whether the trustee made any distributions to Lucy.

4

"[i]f there is no living person in any of the above described categories," the trust is distributed to one or more of Peter's grandchildren, depending on how many living grandchildren there are and which trust it is.[5] The trustee takes the position that this provision also governs distribution in the event Peter has fewer than six grandchildren. For this reason, even though each trust has its own direct beneficiary grandchild, Mary's children stand to benefit if Stephen's children are excluded.

As we have explained, the case turns on the meaning of "grandchild" in the identification of the beneficiary of each trust. The trusts do not expressly define "grandchild." However, they do contain this potentially related descriptive clause: "The words 'child,' 'children,' and 'issue' whenever used herein, shall include legally adopted persons, whether adopted by Grantor or by Grantor's natural or adopted children."

### 3. *The Dispute*

While the chronology of events is not always apparent from the record, the dispute is. Settlor Peter, his daughter Mary, Mary's children (Lucy and Anton), and the trustee all take the position that Stephen's children (Kira and Damian) are not

---

[5] For example, if the first grandchild is not living and has no successor, but there are one, two, or three living grandchildren, the estate of the first grandchild trust will go to the eldest living grandchild. If, however, there are four living grandchildren at that time, the estate of the first grandchild trust will be shared evenly between the third and fourth living grandchildren. The grandchildren identified in this provision vary from trust to trust.

"grandchildren" within the meaning of the grandchildren trusts, and are thus not entitled to any distribution.[6]

The trusts contain a term granting the trustee "the power to construe this Declaration of Trust, and any reasonable construction adopted after obtaining the advice of responsible legal counsel shall be binding on all persons claiming an interest in the trust estate as beneficiaries or otherwise."

On September 18, 2018, Peter signed a declaration, stating, "when I created the 1980 [Grandchildren's] Trusts, I believed that they would not benefit any person born out of wedlock unless that person had lived for a substantial period of time while a minor as a regular member of the household of the natural parent who is a child of mine. I . . . am executing this Affid[av]it to ensure that my intent in this regard is clear." His declaration went on to explain how this interpretation was specifically directed at excluding grandchildren like Kira and Damian from the trusts: "I have never met Damian or Kira and neither of them was raised by Stephen as part of his family. I know that neither of them has lived with Stephen while a minor as a regular member of his household. To the best of my knowledge, Stephen has never met Damian and Stephen only met Kira after she became an adult. [¶] Regardless of whether, when and if

---

[6]     While the petitions were pending and in briefing on appeal, Anton's interests were pursued by his father, Douglas Ellis, as guardian ad litem. Similarly, Damian's guardian ad litem was his mother, Elizabeth Hurley. Both Damian and Anton reached majority while these appeals were pending. They each filed notices of appearance indicating they were now personally represented by the same counsel who had represented their respective guardian ad litem.

Stephen met with or had any relationship with Damian or Kira while they are or were minors, because neither was raised by him during their formative years I do not consider them my grandchildren. Even were Stephen to develop a relationship with Damian now, I would not consider him my grandchild because he is nearing adulthood, and I do not believe it is possible for him to live for a substantial period of time while a minor as a regular member of Stephen's household." Peter specifically stated that he did not consider Damian and Kira to be beneficiaries of the trusts "and that this is consistent with my intention" at the time he executed the trusts.

Armed with this declaration, the current trustee, William Stinehart, Jr., sought "the advice of responsible legal counsel."[7] On February 14, 2019, counsel, having reviewed the language of the trusts and Peter's affidavit, concluded that "under California law, it is reasonable to construe 'grandchild,' as the term is used in the Grandchildren's Trusts, to exclude a person born out of wedlock to a child of Peter who never resided while a minor as a regular member of that child's household." Specifically, counsel relied on Probate Code section 21115, subdivision (b), a statutory rule of construction which provides that, although persons out of wedlock are considered children for the purposes of intestacy, "[i]n construing a transfer by a transferor who is not the natural parent [e.g., grandparent], a person born to the natural parent shall not be considered the child of that parent unless the person lived while a minor as a regular member of the household of the

---

[7] The current trustee was not the original trustee. The parties do not dispute his appointment as substitute trustee.

7

natural parent or of that parent's parent, brother, sister, spouse, or surviving spouse."

The following week, on February 20, 2019, the trustee filed six identical petitions (one for each trust) to determine entitlement to distribution and for instructions—specifically seeking approval of the trustee's determination that grandchildren born out of wedlock may not be treated as beneficiaries unless they lived with one of Peter's children, while a minor, as a regular member of the household.[8] Briefing followed, with Mary's children supporting the petition and Stephen's children opposing it.

On May 2, 2019, the court held a hearing. The objectors took the position that the trust language was unambiguous and included all grandchildren, including, without limitation, grandchildren born out of wedlock. However, if the court were to conclude the trust was ambiguous and extrinsic evidence admissible for its interpretation, the objectors sought discovery. The court determined that it would accept briefing, and have a hearing, on the preliminary issue of whether extrinsic evidence "is even allowed or required or of necessity here."

---

[8] In an apparent attempt to foreclose any attempt by Stephen to effect Kira's beneficiary status by means of adoption, the trustee sought approval of a construction that excluded adult-adopted grandchildren if they, similarly, did not live with one of Peter's children while a minor as a regular member of the household. Peter had executed a declaration that this had been his intent and the trustee obtained an opinion letter from counsel on this issue as well. Stephen did not adopt Kira before his death, and we do not address the issue of adult adoption, except as relevant in our discussion of the law.

The parties then focused their briefing on that issue. The trustee took the position that two types of extrinsic evidence supported his interpretation of "grandchild" as excluding children born out of wedlock who did not live for a substantial time as a minor in the household of Peter's child: (1) Peter's declaration; and (2) Probate Code section 21115.

On June 26, 2019, the parties returned for a hearing on the consideration of extrinsic evidence. After argument, the trial court took the matter under submission.

On July 16, 2019, the court ruled against the trustee and in favor of Kira and Damian. Focusing on the trustor's intent as expressed in the words of the trust itself, the court concluded that the word "grandchild" was not ambiguous and was not amenable to the restrictive definition the trustee sought to impose. The court found Peter's declaration irrelevant, declining to accept his after-the-fact attempt to "define a term that, on its own, expresses no doubt as to its meaning." Finally, the court rejected the trustee's reliance on the current statute as inapposite.

Anton, through his guardian ad litem, filed notices of appeal in each of the cases. No other party appealed.[9] We have consolidated the six appeals for resolution in a single opinion.

---

[9] The parties do not discuss whether Anton has standing in each case, nor any impact of the failure of the trustee and Lucy to appeal.

9

### *DISCUSSION*

Because the trustee interpreted the trust, it is unnecessary at the outset for us to do so.[10] Our task is to determine only whether the trustee's interpretation is reasonable.

**1.** ***The Trustee's Interpretation Will Be Upheld if Reasonable***

In this case, the trustee sought approval of its construction of the trust. The terms of the trust granted the trustee the power to construe the trust, but an interpretation would only be binding if it was adopted after obtaining the advice of counsel and if the construction was "reasonable." The Probate Code is in accord; "a discretionary power conferred upon a trustee is not left to the trustee's arbitrary discretion, but shall be exercised reasonably." (Prob. Code, § 16080.) A trustee "petitioning for instructions as to the exercise of a discretionary power has the burden of proving the exercise will be reasonable." (*Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1087.) "[T]he basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor." (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 662.)

When a trustee is granted a power to act, "the court will not control the trustee's actions exercised pursuant thereto merely because it disagrees with him, but it must find some abuse of discretion or bad faith before it will interfere. [Citation.] Too, while the court may not substitute its judgment for that of the

---

**10** For the purposes of our discussion, we refer to "trust" in the singular, recognizing that a virtually identical analysis applies to all six trusts.

trustee, if it finds on substantial evidence that his powers have been reasonably exercised, the question is not open to review [citation]; a contrary finding, of necessity, is governed by the same legal principle." (*Estate of Flannery* (1969) 269 Cal.App.2d 890, 896.) Here, the trial court construed the contractual language as a matter of law, effectively determining the trustee did not meet its burden of proof. When an appellant challenges a trial court's finding that it did not meet its burden " ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.) Thus, we must determine whether the appellant's evidence necessarily established that the trustee's interpretation of the trust was reasonable.

Our analysis begins and ends with whether the use of the term "grandchild" in the trust is reasonably susceptible to the interpretation of the trustee—that is, that it applies to grandchildren born out of wedlock only if they lived a substantial time, while minors, in the home of Peter's child. As long as "grandchild" can be reasonably construed as the trustee construed it, we must reverse.

2. ***The Language is Reasonably Susceptible to the Trustee's Interpretation***

First, we consider the language of the trust itself. Then we turn to the extrinsic evidence relied on by the trustee. Finally,

11

we address two cases which have addressed similar factual scenarios.

A.    *The Language of the Trust*

We consider the language of the trust as a whole.  (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949.)  Here, the trust contains no definition of "grandchild."  To be sure, it contains language confirming that " 'child,' 'children,' and 'issue' whenever used herein, shall include legally adopted persons, whether adopted by Grantor or by Grantor's natural or adopted children."  But this is of little use to the question before us, as it fails to include "grandchild," and also fails to address children born out of wedlock.  Indeed, it is, in some ways, not a definitional clause at all; it confirms that adopted children are "include[d]" in the terms, but does not otherwise identify "child," "children" or "issue."

B.    *Extrinsic Evidence*

There are two pieces of extrinsic evidence on which the trustee relies:  (1) Peter's declaration; and (2) relevant legal authority.

1.    Peter's Declaration

The trustee relied on Peter's 2018 declaration in which he set forth what he believed he had intended, in 1980, with respect to Stephen's children who had not yet been born.

We are looking for evidence of the trustor's intent at the time of execution.  (*Estate of Russell* (1968) 69 Cal.2d 200, 208-209.)  A decades-later declaration as to the testator's prior intent may well constitute evidence of the testator's intent, but also may be an attempt at revisionist history.  (Cf. *Estate of Pierce* (1948) 32 Cal.2d 265, 273-274 [the remoteness of the extrinsic evidence goes to its weight].)  To the extent, however, it can be perceived

12

as a statement of Peter's unspoken intent regarding a circumstance he had not expressly considered because he never imagined it could be otherwise, it may be relevant and may provide a reasonable basis for the trustee's interpretation.[11] Other evidence convinces us that Peter's statement of intent is worthy of some level of consideration in determining the reasonableness of the trustee's interpretation – namely the law at the time of the creation of the trusts suggests Peter's declared view was, in fact, common belief.

### 2. Governing Authority

"A testator is presumed to be aware of the public policy reflected in the statutory definitions of the terms used in a will at the time the will is executed and to intend that those definitions be followed in construction of the will unless a contrary intent is expressed in the will." (*Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 136.) This does not extend to future law; we do not presume a trustor would have intended to adopt an unknown nonexistent statute as the means of interpreting his trust. (*Id.* at p. 142.)

---

[11] In his opening brief, Anton suggests that, when Peter drafted the trusts, he "probably never gave a thought to the possibility that his son would father a child or two that he would never meet." In reply, Kira suggests that this concession confirms that Peter did not contemplate such grandchildren at the time of drafting, and therefore his later declarations could not reflect his intent at the time. This is an oversimplification. A person who believes the only true children are those raised in the family may not expressly consider sperm donation, egg donation, or children born out of wedlock and raised by another, but the belief may still hold true.

The parties disagree as to precisely how the law treated children born out of wedlock in 1980—and, therefore, the law of which we presume Peter to have been aware.

As Witkin acknowledges, historically, a child "born out of wedlock was excluded unless legitimated or acknowledged for inheritance." (Witkin, Summary of Cal. Law (11th ed. 2020) Wills and Probate, § 250.) However, the law has since evolved, and a child born out of wedlock is deemed included, unless a contrary intent is shown. (*Ibid.*)

Presently, Probate Code section 21115 provides a rule of interpretation for terms of class gifts or relationship.[12] Specifically, Probate Code section 21115, subdivision (a) provides that, except as in subdivision (b), "halfbloods, adopted persons, persons born out of wedlock, stepchildren, foster children, and the issue of these persons when appropriate to the class, are included in terms of class gift or relationship in accordance with the rules for determining relationship and inheritance rights for purposes of intestate succession." However, subdivision (b) provides an exception for gifts from someone not the natural parent (e.g., a grandparent). Specifically: "In construing a transfer by a transferor who is not the natural parent, a person born to the

---

[12] Kira and Damian suggest Probate Code section 21115 applies only to "class gifts," while each individual grandchild trust names a single beneficiary, and therefore is not a "class gift." Regardless of whether the grandchildren trusts, taken together, constitute a "class gift," the language of the statute is not limited to class gifts, but speaks of "terms of class gift or relationship." (Prob. Code, § 21115, subd. (a).) "Grandchild" is a term of relationship.

natural parent shall not be considered the child of that parent unless the person lived while a minor as a regular member of the household of the natural parent or of that parent's parent, brother, sister, spouse, or surviving spouse."[13]

Probate Code section 21115 is based on former section 6152, which was itself adopted in 1983, as part of an overhaul of the law of wills and intestate succession. (Stats 1983, ch. 842, § 55.) The Law Revision Commission comment to the current statute explains that it "construes a transfer to exclude a child born out of wedlock (where the transferor is not the parent) if the child never lives while a minor as a regular member of the parent's household. A child is included in class gift terminology in the transferor's instrument if the child lived while a minor or as a regular member of the household of the parent's spouse or surviving spouse. As a result, a child born of a marital relationship will almost always be included in the class, consistent with the transferor's likely intent."[14] (Law Revision

---

[13]    Probate Code section 21115, subdivision (b) contains similar limiting language regarding adopted children: "In construing a transfer by a transferor who is not the adoptive parent, a person adopted by the adoptive parent shall not be considered the child of that parent unless the person lived while a minor (either before or after the adoption) as a regular member of the household of the adopting parent or of that parent's parent, brother, sister, or surviving spouse." Although we are not concerned with the issue of adoption, the fact that the statute provides the same rule for adopted children as it provides for children born out of wedlock suggests that similar policy considerations apply to both.

15

Com. com. to Prob. Code, § 21115; see also Witkin, Summary of Cal. Law (11th ed. 2020) Wills and Probate, § 250 [citing Law Revision Com. com. to Prob. Code former § 6152, subd. (b)].)

In sum, the law long before the execution of the trust would have excluded all children born out of wedlock from the definition of "grandchild," and the law in effect now has liberalized to the point of including only out-of-wedlock grandchildren who have lived as regular members of the household of the natural parent through whom they claim.

Kira and Damian argue, however, that for a brief period coinciding with Peter's execution of the trust, the law provided that children born out of wedlock were presumed to be considered "grandchildren" for the purpose of inheritance, even if they did not live as regular members of the household of the parent through whom they sought to inherit. But they rely on no 1980 law which directly supports this. For his part, Damian suggests that, under section 286 the Restatement (First) of Property, enacted in 1940, children born out of wedlock are normally

---

[14]     The legislative history of Probate Code former section 6152 confirms this. "Unless otherwise provided in the will, a child born out of wedlock may take as a child of its natural parent only if (1) the child is the child of the testator or (2) the child lived while a minor as a regular member of the household of the natural parent or of the natural parent's parent, brother, sister, or surviving spouse. Thus, for example, if the testator makes a devise to the children of the testator's sister, a child of the sister born out of wedlock who never lived with the sister or one of the designated relatives of the sister does not take under the will as a child of the sister." (Cal. Law Revision Com. Executive Secretary John DeMoully, letter to the Members of the Assem. Com. on the Judiciary, regarding Assem. Bill Nos. 25 and 68, April 11, 1983, attached "Explanation of Assembly Bill No. 25," p. 3.)

excluded, but may be included when "a contrary intent of conveyor is found from additional language or circumstances." He finds such circumstances in Stephen's acknowledgement of Damian as his son. But the Restatement provision looks for a contrary intent of the *conveyor* (here Peter); actions showing a contrary intent on the part of Stephen are not relevant.[15] Kira relies on favorable language from sections 25.2 (defining "child" to include illegitimate children in class gifts) and 25.8 (extending section 25.2 to grandchildren) of the Restatement Second of Property, enacted in 1988. But this Restatement post-dates the execution of the grandchildren's trusts by eight years, and California's adoption of the contrary rule in Probate Code section 21115 by five years.

To be sure, at the time the trust was executed, the law was evolving to treat children born out of wedlock more equally with respect to the right to inherit from their parents (e.g., *Trimble v. Gordon* (1977) 430 U.S. 762, 763, 770-771 [striking down, as violative of equal protection, an Illinois law which allowed illegitimate children to inherit via intestacy from their mothers but not their fathers, while legitimate children could inherit from both].) But this does not mean that the law, or policy, of California was such that children born out of wedlock and raised by one parent would be considered the grandchildren of the parents of the parent who did not raise them.

Instead, it appears to us that the statute enacted in 1983, and understood to then effectuate the likely intent of testators,

---

[15] In fact, this is the precise distinction recognized in Probate Code section 22215 subdivision (b)'s different treatment of gifts when the testator is the parent.

also effectuated the likely intent of testators in 1980. Kira and Damian have identified nothing in the history of Probate Code section 21115 that gives rise to an inference that it was understood to effect a change in the then-existing understanding of how out-of-wedlock children were to be treated in transfers from people who were not their parents. (Cf. *Abramovic v. Brunken* (1971) 16 Cal.App.3d 719, 723-724 [recognizing, with respect to adoption, that there are strong policy reasons which support treating an adopted child the same as a biological one with respect to the child's adoptive parents, but that no such policy reasons apply with respect to the adoptive parents' ancestors].)

Looking at it another way, we underscore that we are not interpreting the trust document itself, but only determining whether the trustee's interpretation of "grandchild" is a reasonable one. To say that it is not reasonable would be to say that, three years after the trust was executed, the Legislature adopted a rule of construction which was, at the time, not a reasonable reflection of the general intent of trustors. This we cannot do.

C. *Case Authority*

There are two cases that have dealt with similar circumstances—one of which seems to favor Kira and Damian, the other the trustee and Mary's children. The cases are not contradictory, however, and the fact which distinguishes them compels the conclusion that the trustee and Mary's children have the better argument.

The first is *In re Estate of DeLoreto* (2004) 118 Cal.App.4th 1048. In that case, the court was concerned with a 1964 will. In the will, the testator indicated that he had three children and

18

four grandchildren. The will created a residuary trust under which the income would go to the testator's children and the corpus to the testator's grandchildren. When the testator died in 1966, he had three children—two were childless and the third had the four grandchildren identified in the will. Nearly 20 years later, one of the testator's formerly childless children adopted two adults (the niece and grandniece of his deceased wife), who had never lived in his home as children. When he died, the adopted adults claimed a right to a share of the trust corpus as grandchildren of the testator. (*Id.* at pp. 1051-1052.) The trial court denied them relief and Division Six of the Second Appellate District affirmed. (*Id.* at pp. 1050-1051.) Specifically, the court relied on Probate Code section 21115 to interpret the will and conclude that the testator had not intended to benefit adult adopted grandchildren who had not lived with his son as children. (*DeLoreto,* at pp. 1052-1053.) This was true even though the will predated section 21115. Section 21115 is a rule of construction, which applies to all instruments, regardless of when executed. (§ 21140.) The court did not find any term in the will ambiguous; it simply determined whether the will was reasonably susceptible of the interpretation suggested by the rule of construction. As it was, section 21115 applied. (*DeLoreto*, at pp. 1053-1054.)

Six years later, Division Eight of the Second Appellate District resolved *Citizens Business Bank v. Carrano* (2010) 189 Cal.App.4th 1200 (*Carrano*). In *Carrano*, the trustors had a child, Christopher, who fathered a child out of wedlock by drugging his physical therapist and having sex with her against her knowledge. She and her husband raised the child, Jonathan, as their own, unaware of his true parentage for a number of

19

years.  Christopher, however, bragged about having fathered Jonathan, and there is evidence that his parents, the trustors, were aware that Christopher claimed the child.  (*Id.* at pp. 1202-1204.)  The trust in dispute was not irrevocable; the trustors amended it a number of times.  Not trusting Christopher with money, they amended it so that he would receive income, but not the assets.  In the event Christopher did not survive his parents, his "issue" would receive the trust assets.  The trustors repeatedly amended the trust to address whether adopted children would be included in "issue," but did not specifically address children born out of wedlock.  (*Id.* at p. 1203.)  Christopher predeceased his father and left three children, all born out of wedlock.  The appeal addressed whether Jonathan, who had been raised as part of another family unit, was entitled to a share of the trust assets.  (*Id.* at pp. 1202, 1204.)

The trial court concluded the trust's silence on the precise circumstances of Jonathan's situation constituted an ambiguity, and, after considering extrinsic evidence, concluded the trustors' intent had been to exclude Christopher's children for whom he was not legally a parent.  (*Carrano*, *supra*, 189 Cal.App.4th at p. 1204.)  The appellate court considering the issue de novo, reversed, concluding that the trust was unambiguous—in that it defined "issue," but made no effort to exclude Jonathan.  The court explained that the trustors, "through their lawyers, chose to define the term 'issue' as a class of people who were lineal descendants of Christopher and who had not been adopted out of the bloodline.  The definition of 'issue' was drafted by lawyers and amended.  Neither of those restrictions apply to Jonathan, plainly Christopher's lineal descendant.  That [the trustors] failed to expressly describe Jonathan's 'special case' does not

20

create a latent ambiguity." (*Id.* at pp. 1207-1208, fns. omitted.) The court confirmed its result with the extrinsic evidence that the grandparents knew Christopher boasted that Jonathan was his son, but did nothing to expressly disinherit Jonathan. (*Id.* at p. 1208.)

*Carrano* distinguished *DeLoreto* on the basis that, in *DeLoreto*, the critical terms were undefined, so reliance on statutory rules of interpretation was appropriate. In *Carrano*, in contrast, the trustors had actually defined "issue" as "lineal descendants." (*Carrano*, *supra*, 189 Cal.App.4th at p. 1208.) Here, like in *DeLoreto*, Peter did not define the key term, "grandchild," in the trust. Like *DeLoreto*, we conclude the trust is reasonably susceptible to the trustee's interpretation. Accordingly, we reverse.

## *DISPOSITION*

The trial court's orders interpreting the trusts in the six probate matters are reversed. The matters are remanded with directions to confirm the trustee's interpretation of the trusts. Each party is to bear its own costs.


RUBIN, P. J.

WE CONCUR:


BAKER, J.                    KIM, J.


21